In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 14-3013, 14-3105

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SINOVEL WIND GROUP CO., LTD.,

*Defendant-Appellant.*

_____

IN RE SINOVEL WIND GROUP CO., LTD.,

*Petitioner.*

_____

Appeal from and Petition for Writ of Mandamus to the United States
District Court for the Western District of Wisconsin
No. 13-cr-84-bbc — **Barbara B. Crabb**, *Judge.*

_____

ARGUED APRIL 1, 2015 — DECIDED JULY 23, 2015

_____

Before WOOD, *Chief Judge*, FLAUM, *Circuit Judge*, and KENNELLY, *District Judge*.[*]

WOOD, *Chief Judge*. In June 2013, the United States delivered a criminal summons to the office of Sinovel Wind Group (USA) Company in Texas. It did so in order to serve process on Sinovel Wind Group Company, a Chinese corporation and the owner of 100% of the shares of Sinovel Wind Group (USA). (To avoid confusion, we refer to the subsidiary Sinovel USA and the parent as Sinovel.) The summons revealed that Sinovel had been indicted in the Western District of Wisconsin for crimes including criminal copyright infringement and trade secret theft. Sinovel contested jurisdiction and moved to quash service of the summons. Concluding that Sinovel USA was the alter ego of Sinovel and that service on Sinovel USA was proper, the district court denied Sinovel's motion. Sinovel appealed (No. 14-3013), and shortly thereafter filed a petition for a writ of mandamus in this court (No. 14-3105), asking us to direct the district court to vacate its order refusing to quash service of process. We conclude that we have no jurisdiction to hear Sinovel's appeal. We also conclude that this case does not meet the high standards for issuance of a writ of mandamus. Sinovel will be free to raise all relevant arguments on appeal from final judgment, should it be convicted and wish to pursue the matter.

**I**

A grand jury in the Western District of Wisconsin indicted Sinovel and three individuals in June 2013 on charges of

---

[*] Hon. Matthew F. Kennelly of the Northern District of Illinois, sitting by designation.

conspiracy to commit trade secret theft, wire fraud, trade secret theft, and criminal copyright infringement. See 18 U.S.C. §§ 371, 1343, 1832(a)(2), 2319; 17 U.S.C. § 506(a)(1)(A). The charges arose from Sinovel's alleged scheme to steal (among other things) computer source code from a company called AMSC, formerly known as American Superconductor; the pilfered code was allegedly going to be used to assist in operating Sinovel's wind turbines. FBI reports indicate that the government served a summons on Sinovel USA's registered agent in Dover, Delaware, in June 2013; it also mailed a summons to Sinovel USA's office in Houston via FedEx and served Sinovel USA's registered agent in Austin. (Sinovel USA was incorporated in Delaware and registered to transact business in Texas.)

In August 2013, Sinovel specially appeared in the district court to file a motion pursuant to Federal Rule of Criminal Procedure 12 to quash service of the summonses, complaint, and indictment. The record indicates that the individual defendants do not reside in the United States and are not expected to appear; they have not been served and play no part in either proceeding before us. We thus have nothing further to say about them.

Sinovel argued that the government had not complied with Rules 4 and 9, because service of process on Sinovel USA and its registered agents was not equivalent to service on Sinovel itself. The magistrate judge to whom the case was assigned was unpersuaded; he concluded that Sinovel USA was the alter ego of Sinovel under Delaware law and thus that service upon Sinovel USA sufficed for service upon Sinovel. Sinovel filed objections to the magistrate judge's order denying the motion to quash service, along with a motion

for reconsideration. The district court rejected the objections and denied the motion. It decided three critical points: first, the facts alleged demonstrated that Sinovel USA was not independent of Sinovel; second, Delaware law governed the question whether Sinovel USA was Sinovel's alter ego for service of process purposes; and third, under Delaware law, alter ego status had been proven.

Sinovel filed a notice of appeal from this interlocutory ruling in September 2014. It also filed a petition for a writ of mandamus directly with this court. We instructed the parties to address the question of appellate jurisdiction in their consolidated briefs, along with the merits. The two proceedings have been consolidated for decision.

## II

We have jurisdiction over appeals from all final decisions of the district courts. 28 U.S.C. § 1291. Criminal defendants, like others, must ordinarily wait for a final judgment before they may bring an appeal. The "core application" of section 1291 "is to rulings that terminate an action." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015). There is, however, a "small class" of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The Supreme Court has imposed three requirements for a collateral order to be appealable: the decision must be conclusive; it must resolve important questions separate from the merits; and it must be effectively unreviewable on appeal from the eventual final judgment in the underlying action. *Mohawk*

*Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). The Court has stressed that the orders qualifying for appeal under this doctrine comprise a "small category," *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995), and that the collateral order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk*, 558 U.S. at 106 (quotations omitted).

Sinovel argues that its appeal ticks all the boxes that *Cohen* and other cases require for appellate jurisdiction. Recognizing the Court's recent warning in *Mohawk* against expanding the set of appealable collateral orders, it urges nonetheless that its case fits the bill. We are unconvinced. The "small class" of non-final orders that may be appealed is to be policed carefully. *Cohen*, 337 U.S. at 546. Sinovel's position would lead to the opposite result: there would be no principled way to avoid the conclusion that every denial of a motion to quash service of process is appealable. Such an outcome would be inconsistent with the Court's guidance. See *Will v. Hallock*, 546 U.S. 345, 350 (2006) ("[W]e have meant what we have said; although the Court has been asked many times to expand the 'small class' of collaterally appealable orders, we have instead kept it narrow and selective in its membership."). Sinovel realizes the challenge before it, and so it has tried to craft a narrower rule into which its case would fit. Here is its proposal: denials of motions to quash service in cases in which the moving party is "a foreign, partially state-owned corporation … [and] prosecutors have plainly failed to comply with the unambiguous requirements of [Criminal Rule 4]" are appealable. That is a mouthful, but even if we were to find this anything but jury-rigged, there can be no denying that this would create a new catego-

ry of appealable collateral orders—precisely what the Supreme Court has strongly discouraged.

Sinovel otherwise rests its position mainly on what it contends is the practical unreviewability of the district court's denial of its motion to quash after a judgment on the merits. That overstates the case considerably. It is true that the district court's ruling has eliminated the option of avoiding the proceeding altogether, but Sinovel never had such a right. (This is not like double jeopardy, or the immunity doctrines whose purpose is to avert an unauthorized proceeding.) This is, in effect, a branch of personal-jurisdiction law. People routinely raise personal-jurisdiction objections at the district-court level, their argument is rejected, and they argue on appeal that the district court erred. If the appellate court agrees with them, the judgment is set aside. That is just what would happen if Sinovel is convicted after a trial and if it decides to take an appeal. If the court of appeals concludes that the district court should have granted the motion to quash, it will set aside the judgment.

Even if all this is true, Sinovel argues, there is an exception for cases in which the importance of the particular value at stake is sufficiently great that an immediate appeal must be allowed to protect that value. See *Mohawk*, 558 U.S. at 107 ("[T]he decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'") (quoting *Hallock*, 546 U.S. at 352–53). This is such a case, Sinovel continues, because the litigation imperils the foreign relations of the United States and will harm comity between the United States and China. It emphasizes that the government of China has a minority (18%) stake in Sinovel; if Si-

novel must endure proceedings in a U.S. court, the Chinese government's dignity will be adversely affected.

A big problem with this argument is the fact that the Foreign Sovereign Immunities Act (FSIA) in the United States does not recognize any special rights for foreign-government ownership of less than a majority of the shares (or their equivalent). See 28 U.S.C. § 1603(b)(2); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) ("[A] foreign state must itself own a majority of the shares of a corporation if the corporation is to be deemed an instrumentality of the state under the provisions of the FSIA."). The FSIA codifies the line Congress has drawn to trigger protections for foreign sovereign interests. China's stake in Sinovel is not over that line. Sinovel (which did not cite the FSIA in either its opening or reply brief) has offered no reason for us in essence to confer sovereign immunity on entities that fall outside the scope of the statute.

We raised this problem at oral argument, where Sinovel conceded that the rules applying to foreign sovereigns are not (at least technically) applicable to it. It argued instead that China's stake in Sinovel warrants at least "a thumb on the scale" in favor of appellate jurisdiction over the district court's denial of the motion to quash. But Sinovel has pointed to no rule to that effect. It cites *Samantar v. Yousuf*, 560 U.S. 305 (2010), in support of its argument that the FSIA's language does not necessarily exclude entities it does not mention from its protections. *Samantar*, however, dealt with the question whether a foreign official could invoke the protections of the FSIA and thereby obtain immunity from suit. No, the Court replied: the term "foreign state" is defined in the statute, and officials are not mentioned. *Id.* at 315–16. It

reached that result despite the fact that it recognized some residual federal common law of foreign sovereign immunity. *Id.* at 324. If *Samantar* helps anyone, it helps the government in this case, not Sinovel. We see no reason why a foreign corporation in which a foreign government has a minority stake is entitled to a "thumb on the scale" for jurisdictional purposes.

There are other reasons to take issue with Sinovel's position that requiring it to stand trial will harm U.S. foreign relations and that it is up to the courts to save the day. Among them is the fact that the decision to prosecute a foreign corporation represents the assessment of the Executive Branch, through the Department of Justice, that the proceeding furthers U.S. interests. It is not up to the courts to monitor the extent of Justice's consultations with the Department of State, the Office of the U.S. Trade Representative, the Commerce Department, or any other interested entity, although we are aware that such consultations often take place. See, *e.g.,* Lori B. Morgan & Helaine S. Rosenbaum, *U.S. Department of Justice Antitrust Enforcement Policy*, 34 HARV. INT'L L.J. 192, 197 (1993) ("[T]he DOJ analyzes enforcement situations to avoid prosecutions which conflict with the laws of foreign governments, performs a balancing test of competing national interests, and considers possible effects on the United States' foreign relations." (citations omitted)); see also DEP'T OF JUSTICE AND FED. TRADE COMM'N, ANTITRUST ENFORCEMENT GUIDELINES FOR INTERNATIONAL OPERATIONS § 3.2 (1995), available at http://www.justice.gov/atr/antitrust-enforcement-guidelines-international-operations ("In cases where the United States decides to prosecute an antitrust action, such a decision represents a determination by the Exec-

utive Branch that the importance of antitrust enforcement outweighs any relevant foreign policy concerns.").

Sinovel has not provided us the kind of compelling reason we would need to override the government's assessment here. It argues, for example, that the government neglected to employ the procedures spelled out in a judicial assistance agreement between the United States and China to serve process in this case. That fact, if it is so, does not tell us that the Department failed to consider the effect of this prosecution on the government's relations with China, let alone that it will affect or has affected those relations. Furthermore, Sinovel does not explain what difference it would have made if the government had tried to follow the agreement in order to serve process on Sinovel in China. The agreement says that if the United States asks China to serve a document, China "shall use its best efforts" to do so—but that China "shall not be obligated to effect service of a document which requires a person to appear as the accused." Judicial Assistance Agreement, China-U.S., at 8, June 19, 2000, T.I.A.S. No. 13,102. Sinovel offers no reason for us to assume that failure to initiate this optional method of service has disrupted international relations, nor why an earlier opportunity to present its arguments to a U.S. court would repair such a rupture.

Sinovel's other arguments fare no better. It contends that criminal proceedings against it in Wisconsin could interfere "with ongoing civil litigation in Chinese courts" over the same dispute. Sinovel supports its argument with citations to a press release and an article from *WindPower Monthly* about lawsuits that AMSC has filed against Sinovel in China. Since oral argument, it has also filed several supplemental

letters informing us of the progress of the Chinese litigation. Yet Sinovel does not detail how those lawsuits could be affected by the eventual outcome of the criminal case here, even in its latest submission detailing the "complete victory" Sinovel had recently achieved against AMSC in the Chinese courts. These lawsuits, we are told, have been pending since 2011; Sinovel was indicted in 2013, and yet we have no evidence thus far about any effect that the Chinese litigation has had on this case or on relations between the United States and China. It is also worth noting that Sinovel will have an opportunity to present those cases to the district court and argue for whatever recognition and enforcement may be due to them.

Sinovel also says that courts must guard against the extraterritorial expansion of federal service of process, but it appeals again to comity for this point. We note that the topic of extraterritorial service is addressed in Federal Rule of Criminal Procedure 4(c)(2), which says that "[a] warrant may be executed, or a summons served, within the jurisdiction of the United States or *anywhere else a federal statute authorizes an arrest*" (emphasis added). In other words, it is Congress that makes the judgments about service of process outside the country; the courts' responsibility is to ensure that the operative rules are followed.

Sinovel has made other arguments supporting its effort to obtain review under the collateral order doctrine, but in the end they do not carry the day. It is not enough to show, as we may assume Sinovel did, that the district court conclusively decided the issue of service of process, and that this question is separate from the merits. It must also show effective unreviewability after final judgment, and it has not. We

therefore dismiss appeal no. 14-2013 for want of appellate jurisdiction.

### III

Sinovel also argues that we have jurisdiction over its petition for a writ of mandamus. That is correct: jurisdiction exists under the All Writs Act, 28 U.S.C. § 1651(a). But that petition fares no better than Sinovel's appeal, for slightly different but related reasons.

We may issue a writ of mandamus "only in extraordinary circumstances … to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *In re Hijazi*, 589 F.3d 401, 407 (7th Cir. 2009) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). In assessing the question whether a writ should issue, we consider whether the party asking for the writ has no other adequate remedy to attain her desired relief; whether that party has demonstrated that her right to the writ is "clear and indisputable"; and whether this kind of intervention is appropriate under the circumstances. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004) (quotations omitted).

Before we turn to the merits, we note that the government contends that Sinovel has waived its mandamus argument. It complains that Sinovel merely incorporated its earlier mandamus brief from the companion case into its brief on appeal. The government is correct that Sinovel's presentation is, to put it charitably, spare. It used just three sentences of a 53-page brief to address mandamus. But that overlooks the fact that there is considerable overlap between the points Sinovel made in an effort to justify an interlocutory appeal

and the points it must make to earn mandamus relief. We decline to rest our decision on waiver and turn to the merits.

Our reasons for rejecting a collateral-order appeal have their counterpart for this part of the case. Sinovel argues in its mandamus petition that the district court's order declining to quash service of process was clearly erroneous, and then it leaps to the conclusion that it has no other recourse but mandamus. Waiting for a final judgment is not an option, it insists, because this case is "unique." Yet Sinovel's arguments explaining why mandamus "is the only adequate remedy" merely repeat its belief that action now by this court (and by this Sinovel can mean only action in its favor, which is obviously not guaranteed) would avert damage to U.S.-China relations. That argument fares no better to support mandamus than it did to support an immediate appeal.

The mandamus cases Sinovel cites that have anything to do with foreign defendants in the U.S. courts are distinguishable. Rather than prove Sinovel's point, they show that we are willing to issue writs of mandamus only in the most unusual circumstances. *E.g.*, *Abelesz v. OTP Bank*, 692 F.3d 638, 651 (7th Cir. 2012) (case was extraordinary because Holocaust survivors' claims against Hungarian banks for expropriation of property had "appreciable foreign policy consequences" with "astronomical" potential damages of $75 billion, and issue of personal jurisdiction was "crystal" clear); *Hijazi*, 589 F.3d at 407–12 (in an archetypal standoff, foreign defendant never appeared in United States to answer charges, his country of residence refused to extradite him, and district court refused to rule on his motions to dismiss). No such compelling reason for immediate action exists here; to the contrary, we are confident that, should it come to this,

Sinovel will have an adequate remedy in an appeal after final judgment.

One other matter requires our attention. Sinovel asks us to certify to the Delaware Supreme Court the question whether a showing of fraud is required under Delaware law for piercing of the corporate veil. Because we do not have jurisdiction over Sinovel's appeal and we have found that the standards for mandamus are not met, we must decline this request.

## IV

The district court's denial of Sinovel's motion to quash service of process is not an appealable order under the collateral order doctrine. We thus DISMISS Sinovel's appeal, No. 14-3013, for want of appellate jurisdiction. In No. 14-3105, we conclude that the requirements for issuance of a writ of mandamus have not been met, and so we DENY Sinovel's petition.