In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 15-1221

ROBERTSON FOWLER, III,

*Petitioner-Appellant*,

*v.*

KEITH BUTTS, Superintendent, New Castle Correctional Facility,

*Respondent-Appellee*.

—————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-1744-JMS-MJD — **Jane Magnus-Stinson**, *Judge*.

—————————

ARGUED APRIL 7, 2016 — DECIDED JULY 20, 2016

—————————

Before EASTERBROOK, KANNE, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Robertson Fowler pleaded guilty in Indiana to unlawful possession of a firearm by a "serious violent felon" who was also a habitual offender. The judge sentenced him to 30 years' imprisonment: 15 for the possession offense and 15 extra on account of his criminal history.

While his case was on appeal, the Supreme Court of Indiana held that a prior conviction used to establish status as a "serious violent felon" cannot also be used to establish status as a habitual offender. *Mills v. State*, 868 N.E.2d 446 (Ind. 2007). Fowler's appellate lawyer did not bring *Mills* to the attention of the intermediate appellate court, which affirmed his sentence. *Fowler v. State*, 2007 Ind. App. LEXIS 2015 (Aug. 31, 2007). On collateral review the same court held that it would not have done any good to rely on *Mills*, because Fowler's plea bargain waived reliance on the approach that *Mills* adopted. *Fowler v. State*, 977 N.E.2d 464 (Ind. App. 2012). Fowler then filed a federal collateral attack under 28 U.S.C. §2254, contending that he had received ineffective assistance of counsel in his initial appeal. The district court denied this petition, relying on the state judiciary's conclusion that Fowler had waived the benefit of *Mills*, and that given the waiver Fowler did not suffer any prejudice from counsel's omission. 2015 U.S. Dist. LEXIS 6419 (S.D. Ind. Jan. 21, 2015). Fowler contends in this court that the state's 2012 appellate decision was wrong: that he had not waived the benefit of the *Mills* theory, and that a careful lawyer therefore would have relied on *Mills* in the initial appeal.

We do not address the substance of Fowler's argument, because a procedural problem takes precedence. District Judge Magnus-Stinson, who denied Fowler's federal collateral attack, also was the person who sentenced Fowler during her time on the state's bench. We held in *Weddington v. Zatecky*, 721 F.3d 456, 461–63 (7th Cir. 2013), that reasonable observers would doubt the impartiality of a former state judge who is asked to assess the validity of her own decision after coming to the federal bench, and that 28 U.S.C. §455(a)

therefore requires the case to be heard by a different federal judge.

Indiana asks us to distinguish *Weddington* on the ground that Fowler contests the performance of his appellate counsel rather than the decision by Judge Magnus-Stinson, who sentenced him before *Mills* was released. But Fowler's challenge remains one to his 30-year sentence, and if he prevails he will be entitled to a new appeal in the state system in which Indiana's appellate judiciary will have to decide whether the sentence was properly imposed, given the terms of state law and Fowler's plea bargain.

Federal judges routinely hear challenges to their own convictions and sentences under 28 U.S.C. §2255. Section 2255(a) designates the motion as one in the criminal case, which implies the propriety of assignment to the original judge. Federal judges routinely are asked to change their minds (as in motions to alter the judgment under Fed. R. Civ. P. 59 and 60, or petitions for rehearing on appeal), and no one supposes that such a request disqualifies the judge under §455(a). But the state–federal sequence is different. Section 2254 is designed to ensure that a fresh pair of eyes looks at the matter, from a different perspective. That goal cannot be accomplished if the federal judge who entertains the petition under §2254 also was the state judge who imposed or affirmed the judgment now being contested.

The only sensible approach is all or none: a federal judge can hear a collateral attack on a conviction or sentence she imposed or affirmed as a state judge, or she cannot. Trying to work through the details of the petitioner's federal theory in relation to the judge's role on the state bench would be a formula for uncertainty, offering reasons to doubt the ade-

quacy of the federal system. For the reasons given above and in *Weddington*, "all" is better than "none": a federal judge *always* is disqualified from hearing a collateral attack on a judgment he or she entered or affirmed as a state judge. Judge Magnus-Stinson should have turned this proceeding over to a different judge.

Indiana maintains, however, that Fowler forfeited his opportunity to have the case heard by someone else, because he did not ask this court to issue a writ of mandamus that would have prevented Judge Magnus-Stinson from deciding the case.

Ever since 1985 this circuit has distinguished between disqualification under §455(a) and disqualification under §455(b). See *United States v. Balistrieri*, 779 F.2d 1191, 1204–05 (7th Cir. 1985). We held in *Balistrieri* that §455(b) creates personal rights that can be vindicated on appeal but that §455(a), which concerns the appearance of impropriety, creates only systemic interests—important to the judicial system but not individual litigants—which may be vindicated only before final decision in the district court. Once the district judge has acted, *Balistrieri* holds, any bad appearance has come to pass; and when there is no actual bias the litigant has no personal interest in upsetting an untainted judgment. Many decisions since *Balistrieri* decline to consider arguments that depend on §455(a). See, e.g., *United States v. Johnson*, 680 F.3d 966, 979 (7th Cir. 2012); *United States v. Diekemper*, 604 F.3d 345, 351–52 (7th Cir. 2010); *United States v. Troxell*, 887 F.2d 830, 833 (7th Cir. 1989).

Some of our recent decisions have shown unease about *Balistrieri*'s distinction between §455(a) and §455(b). *Weddington* found a reason to remand that did not depend on

§455(a) and added that, once the case returned to the district court, it must be assigned to a different judge. More recently, a panel departed from *Balistrieri* because only a short time had elapsed between when mandamus could have been sought and the entry of final judgment. *United States v. Herrera-Valdez*, No. 14-3534 (7th Cir. June 17, 2016), slip op. 5–8. One member of this court has called for *Balistrieri*'s overruling, see *United States v. Boyd*, 208 F.3d 638, 649–52 (7th Cir. 2000) (Ripple, J., dissenting). Judge Ripple observed that no other circuit has followed *Balistrieri*, that several have rejected its approach, and that it appears to be inconsistent with two decisions by the Supreme Court that have decided §455(a) issues initially raised by appeal rather than mandamus. See *Liteky v. United States*, 510 U.S. 540 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).

We have resurveyed the appellate precedents. The situation identified by Judge Ripple in 2000 still holds: No court other than the Seventh Circuit refuses to consider §455(a) arguments on appeal. Some of the other circuits reject this circuit's doctrine after citing our decisions; others simply ignore *Balistrieri* and its successors. See, e.g., *Hardy v. United States*, 878 F.2d 94, 98 n.4 (2d Cir. 1989) ("Unlike the Seventh Circuit, this Circuit will entertain a section 455(a) recusal claim on direct review"); *United States v. Cooley*, 1 F.3d 985, 995–96 & n.9 (10th Cir. 1993); *In re School Asbestos Litigation*, 977 F.2d 764, 777–78 & n.12 (3d Cir. 1992); *Diversified Numismatics, Inc. v. Orlando*, 949 F.2d 382, 384 (11th Cir. 1991). At least three other circuits have considered §455(a) issues on appeal without discussion. See, e.g., *United States v. Payne*, 944 F.2d 1458, 1476–77 (9th Cir. 1991); *United States v. Wade*, 931 F.2d 300, 302–05 (5th Cir. 1991); *United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989). We are the odd circuit out. We ob-

served in *United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc), that being alone among the circuits justifies giving the subject a fresh look. We have done that and conclude that *Balistrieri* and its successors must be overruled to the extent they hold that arguments under §455(a) cannot be raised on direct appeal.

*Liteky* and *Liljeberg* do not themselves doom *Balistrieri*. The question was not raised by the litigants in either case and was not discussed by the Justices. The Court may have assumed the propriety of deciding §455(a) questions on appeal, but an assumption is not a holding.

The problem with *Balistrieri* is its lack of textual support in §455. Here is the full text of §455(a) and (b):

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a finan-

> cial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>
>> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>>
>> (ii) Is acting as a lawyer in the proceeding;
>>
>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>>
>> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

These provisions are parallel. Both (a) and (b) lay on the judge a duty to step aside if some circumstance holds. Nothing in the language or structure of this statute says or implies that the duty under subsection (a) must be enforced exclusively by mandamus, while the duty under subsection (b) may be enforced on appeal.

Our opinion in *Balistrieri* did not rely on the text or context of §455. It derived the mandamus rule from a belief that problems with the appearance of partiality should be resolved as early in the case as possible, coupled with a belief that the "appearances" problem concerns the judiciary as a whole rather than the rights of any litigant. See 779 F.2d at 1204–05. These are worthy considerations, but they are not part of the statute. The Supreme Court has told us that judges must enforce statutes as Congress wrote them and the President approved them, without adding or subtracting features that the judges deem to be wise policy. See, e.g., *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2033–34 (2014).

And if wise policy counts, it is hard to see why it is *invariably* wise to limit issues under §455(a) to review by mandamus. A request for interlocutory review may come too early in a case, before the features that call a judge's impartiality into question have become apparent. A court of appeals issues a writ of mandamus only when the applicant has an indubitable right to that prerogative writ or there is no other way to correct a manifest injustice. See, e.g., *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *Cheney v. United States District Court*, 542 U.S. 367, 380–81 (2004). Factual or legal uncertainty means no mandamus. That may make it unduly difficult to enforce §455(a), compared with consideration in an appeal where the question is whether the district judge was *right* to serve, rather than whether disqualification was certainly required.

More than that: the assumption in *Balistrieri* that litigants lack personal rights in the appearance of impartiality is doubtful. True enough, the judicial system and the public as a whole want to be confident that impartial judges are assigned to cases. But we regularly rely on litigants to enforce procedural rules, and §455(a) is one of those rules no less than §455(b). Judges sometimes say that §455(a) is about the appearance of impropriety, while §455(b) is about actual bias. No one doubts that litigants are entitled to have their cases heard by unbiased judges, but it is too simple to say that every part of §455(b) concerns actual bias. Section 455(b)(4) disqualifies a judge who has a financial interest in the case—and also a judge who acts as a fiduciary for someone else who does (even when the judge has no interest at all), as well as a judge whose spouse or minor child has a financial interest. Section 455(d)(4) defines "financial interest" to include even a single share of stock, so that a judge is disquali-

fied if he is a fiduciary for an entity (say a private college on whose board he serves as an alumni representative) that owns one share of stock in a huge corporation, whose value cannot be materially affected by the litigation. It may be wise to remove all question by following the rule that the smallest, indirect interest is disqualifying, but that's not what "actual bias" means. Enforcement of §455(b) thus often is about the maintenance of appearances—and if its rules can be vindicated on appeal, why can't the rule of §455(a) be vindicated on appeal? We hold today that it can be.

Next we must consider the possibility that Fowler forfeited his right to raise §455(a) on appeal by not filing a motion in the district court seeking the judge's disqualification. Several of this circuit's decisions hold that failure to file a motion in the district court waives the right to present the contention on appeal. See, e.g., *United States v. Ruzzano*, 247 F.3d 688, 694 (7th Cir. 2001); *Johnson*, 680 F.3d at 979–80. We assume that these decisions mean forfeiture rather than waiver; it takes an intentional step to waive a right. See *United States v. Olano*, 507 U.S. 725, 733–34 (1993). But under these decisions the upshot of either forfeiture or waiver is the same: §455 will not be enforced on appeal.

Other circuits are all over the lot. Some treat silence as either waiver or forfeiture; those that classify the omission as forfeiture allow review for plain error. See, e.g., *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014); *In re Lupron Marketing and Sales Practices Litigation*, 677 F.3d 21, 37 (1st Cir. 2012); *Clemmons v. Wolfe*, 377 F.3d 322 (3d Cir. 2004); *United States v. Berger*, 375 F.3d 1223, 1227–28 (11th Cir. 2004); *Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 216 (5th Cir. 1998); *United States v. Barrett*, 111 F.3d 947, 951–53

(D.C. Cir. 1997); *United States v. Owens*, 902 F.2d 1154, 1155–57 (4th Cir. 1990). Two circuits require a motion in the district court only if the record shows that the litigant knew enough to see that a motion was necessary (or prudent). See, e.g., *United States v. Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995); *Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1414 (8th Cir. 1983). Some circuits have decisions in multiple lines, sometimes using waiver doctrine, sometimes forfeiture doctrine, and sometimes excusing the absence of a motion.

The premise of decisions such as *Ruzzano* and *Johnson* is that litigants must take the initiative. That is a norm in litigation—but §455 is an exception to the norm, and its language affects what role the litigants must play. Both subsection (a) and subsection (b) say that the judge "shall disqualify himself when" certain things are true. The judge, not the litigant, must take the initiative.

The judge, not the litigant, knows what investments are held by members of the household (§455(b)(4)) and who employs the judge's relatives within the third degree (§455(b)(5)). Litigants may be at a disadvantage on the law as well as the facts. Fowler was sentenced by Judge Magnus-Stinson in the state case and likely recognized that the Judge Magnus-Stinson assigned to the federal case is the same person (though we cannot be sure that he knew this; different people with the same name may serve in state and federal judiciaries). But Fowler, who lacked the benefit of counsel in the district court, may not have known about *Weddington* and therefore may not have understood that he has a right to a decision by a different federal judge. That may be why this issue did not surface until we appointed counsel to represent

Fowler on appeal. We expect *pro se* litigants to brush up on the law behind their claims; we do not require them to come across all other rules of the judicial system. Because the judge knows both the facts and the law about disqualification better than any litigant, even a litigant with a lawyer, it is well to stick with the statutory language: the judge must disqualify herself when the statute so provides whether or not the litigant files a motion.

Section 455(e) clears up any doubt on that score. It says that a judge may accept a waiver of disqualification under subsection (a), but only if "it is preceded by a full disclosure on the record of the basis for disqualification." The statute does not permit an otherwise-disqualified judge to serve just because the litigant fails to make the appropriate motion. Instead the judge must take the initiative and make a "full disclosure on the record"—and even then only a waiver by the litigant allows the judge to continue in an adjudicatory capacity. If a litigant's silence after a judge's disclosure does not remit the disqualification imposed by §455(a), a litigant's silence without full disclosure cannot do so. (The fact that remittal of disqualification under §455(a) is possible, but only with a litigant's waiver, also reinforces the conclusion stated earlier that §455(a) creates personal rights, which implies that they can be vindicated on appeal.)

The Supreme Court has allowed litigants to seek disqualification despite the absence of a protest in the court where the disqualified judge sat. See *Nguyen v. United States*, 539 U.S. 69 (2003). Both *Nguyen* and the recent *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), treat the participation of a disqualified judge as a form of structural error, which may be noticed at any time. In both *Nguyen* and *Williams* the dis-

qualified judge participated in an appellate court that decided the case unanimously. The Supreme Court reversed both judgments even though both cases likely would have come out the same way with a different complement of judges.

It follows from this discussion that *Ruzzano*, *Johnson*, and any similar decisions in this circuit must be, and are now, overruled to the extent they forbid appellate review of judicial-disqualification issues in the absence of a motion in the district court.

Because this opinion overrules two lines of decisions in this circuit, it was circulated before release to all judges in active service. See Circuit Rule 40(e). None of the judges favored a hearing en banc.

The judgment is vacated, and the case is remanded for decision by a different district judge.