In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2342

IN RE: ADAM GIBSON, *et al.*,

*Petitioners.*

CURTIS LOVELACE, *et al.*,

*Parties in Interest.*

Petition for Writ of Mandamus to the United States
District Court for the Central District of Illinois.
No. 1:17-cv-01201-SEM-EIL — **Sue E. Myerscough**, *Judge.*

SUBMITTED AUGUST 6, 2019 — DECIDED AUGUST 8, 2019
PUBLISHED FEBRUARY 25, 2020

Before MANION, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendants in a civil rights case in the Central District of Illinois moved to disqualify the assigned judge under 28 U.S.C. § 455(a). When the judge denied their motion, defendants filed a petition for a writ of mandamus in this court seeking an order requiring the judge to disqualify herself on two grounds. We denied the petition by order of August 8, 2019, saying that an opinion would follow.

As we explain below, neither ground for recusal required the judge to disqualify herself from this case.

We first set the scene with the underlying lawsuit and summarize proceedings on the recusal issues in the district court. We then address the use of mandamus to litigate disqualification after our decision in *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). Finally, we turn to the defendant-petitioners' specific arguments for disqualification.

I.    *The Underlying Lawsuit*

On February 14, 2006, Mrs. Cory Lovelace died in Quincy, Illinois. The cause of her death was undetermined at that time, but the police later reopened the investigation. In August 2014, a grand jury indicted Cory's husband, Curtis Lovelace, for her murder. Curtis Lovelace, who is a plaintiff in the underlying civil rights suit, was and remains a criminal defense lawyer in the Illinois bar.

Lovelace was tried for murder in 2016, resulting in a hung jury and mistrial. In a second trial in March 2017, a jury found him not guilty.  In May 2017, Lovelace and his sons filed suit against several Quincy police officers, the city of Quincy, the Adams County coroner, and Adams County itself under 42 U.S.C. § 1983 alleging federal constitutional violations. They claim that defendants fabricated evidence, coerced witnesses, concealed exculpatory evidence, and in essence framed Lovelace for murdering his wife.

The new civil rights case was assigned to Judge Myerscough, who denied defendants' partial motion to dismiss in November 2017. Discovery proceeded. A year later, in November 2018, the case was reassigned to Judge Bruce. Five months after that, on April 15, 2019, plaintiffs moved to

disqualify Judge Bruce under 28 U.S.C. § 455. Lovelace was representing in post-conviction proceedings a federal defendant who had been sentenced by Judge Bruce. Judge Bruce granted the recusal motion the next day, and Chief Judge Darrow reassigned the case back to Judge Myerscough.

II. *Disqualification Issues in the District Court*

Judge Myerscough promptly scheduled a trial for late 2019 and a status conference for May 13, 2019. During that conference, Judge Myerscough informed counsel about several circumstances that might have seemed relevant to counsel regarding her impartiality, as is her usual practice.

The Judge first told counsel that her daughter, Lauren Myerscough-Mueller, had just been hired as an attorney with the University of Chicago's Exoneration Project, having started work a week earlier. Plaintiffs in the *Lovelace* civil case are represented by the law firm of Loevy & Loevy, which funds the Exoneration Project and donates time of its lawyers, including the time of the attorneys of record in this case, Jonathan Loevy and Tara Thompson. Thompson told the court and opposing counsel that she worked with Myerscough-Mueller at the Exoneration Project but did not supervise her and was not responsible for her compensation. The law firm and the Exoneration Project has screened Myerscough-Mueller from any involvement in any cases before Judge Myerscough, including this case.

The Judge also told counsel that she had recently attended a dinner for the Illinois Innocence Project—a different organization affiliated with the University of Illinois Springfield—where her daughter had worked before joining the Exoneration Project. Judge Myerscough reported that the dinner

recognized many "exonerees," including plaintiff Curtis Lovelace.

Judge Myerscough also told counsel that she had been aware of the case from publicity and from brief conversations with lawyers, given the high interest in the murder trial of a criminal defense lawyer in central Illinois. Finally, she added that she had had cases with the City of Quincy and Adams County and with one defense lawyer and the firm of another defense lawyer.

The Judge invited counsel to discuss these matters with their clients and to consider whether to request recusal, as she did in other cases. Two days later, defendants filed a brief written request that Judge Myerscough disqualify herself from the case. Plaintiffs filed a written response suggesting that disqualification was not required. This led to a more formal motion and more extensive briefing on the issue. Defendants argued for Judge Myerscough's recusal only under the general standard of 28 U.S.C. § 455(a), not the more specific criteria spelled out in § 455(b). On July 10, 2019, Judge Myerscough issued a written opinion denying the motion for recusal. Defendants in the civil litigation then filed this petition for a writ of mandamus ordering Judge Myerscough to recuse herself from the case. The petition was fully briefed.

III. *The Use of Mandamus for Recusal Issues*

We have long recognized that a petition for writ of mandamus is an appropriate method to seek recusal of a district judge under 28 U.S.C. § 455(a). See *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117–18 (7th Cir. 1977). For over thirty years we held that a denied § 455(a) motion could be reviewed *only* by mandamus petition, whereas § 455(b) denials could also be

reviewed on direct appeal after final judgment. See *United States v. Balistrieri*, 779 F.2d 1191, 1205 (7th Cir. 1985), overruled on this point by *Fowler v. Butts*, 829 F.3d 788, 793 (7th Cir. 2016). As we explained in *Fowler*, though, our position on § 455(a) was unique among the circuits and lacked statutory support. *Id.* at 791–92. We now permit review of a denied recusal motion—under any provision of § 455—through appeal of the final judgment. *Id.* at 793.

Our three-decade ban on appeals of § 455(a) denials after final judgment had a side-effect on the standard of review for mandamus petitions for recusal. Writs of mandamus are extraordinary remedies granted "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *In re Hijazi*, 589 F.3d 401, 406 (7th Cir. 2009), quoting *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980). The petitioner must ordinarily show that "her right to the writ is 'clear and indisputable.'" *United States v. Sinovel Wind Group Co.*, 794 F.3d 787, 793 (7th Cir. 2015), quoting *Cheney v. United States District Court*, 542 U.S. 367, 380–81 (2004).[1]

For post-judgment appeals of § 455(b) denials of recusal, we have long applied a *de novo* standard of review. E.g., *Taylor v. O'Grady*, 888 F.2d 1189, 1201 (7th Cir. 1989), citing *Balistrieri*, 779 F.2d at 1203 (§ 455(b) holding). Then, since we had made mandamus "the only recourse available" to challenge § 455(a)

---

[1] We say "ordinarily" because the same standard may not apply to relatively rare "supervisory" writs of mandamus. See, e.g., *Schlagenhauf v. Holder*, 379 U.S. 104, 110–11 (1964) (reversing denial of supervisory writ); *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60 (1957) (affirming supervisory writ); see generally 16 Wright, Miller & Cooper, Federal Practice & Procedure §§ 3934 & 3934.1.

denials, we departed from the usual mandamus standard and decided that we would also apply *de novo* (non-deferential) standards to mandamus petitions in this particular context. See *Hook v. McDade*, 89 F.3d 350, 353–54 & n.2 (7th Cir. 1996), citing *Taylor*, 888 F.2d at 1201; see also *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998), citing *Hook*, 89 F.3d at 353–54; *In re United States*, 572 F.3d 301, 307 (7th Cir. 2009), also citing *Hook*, 89 F.3d at 353–54; *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010), citing *In re United States*, 572 F.3d at 307. We explained that the unusually relaxed mandamus standard stemmed from the unavailability of direct review: "Because the rule forecloses appellate review at the conclusion of the case, we review a petition for mandamus to enforce section 455(a) under the normal appellate standard." *United States v. Boyd*, 208 F.3d 638, 646 (7th Cir. 2000), vacated on other grounds, 531 U.S. 1135 (2001).

Adopting a *de novo* standard of appellate review as the test for mandamus relief thus grew out of the now-abandoned rule in *Balistrieri*, 779 F.2d at 1205. The *de novo* standard departed from the normal role mandamus serves. The writ does not, after all, allow review in the ordinary sense; rather, a petitioner must establish her entitlement to the "extraordinary remedy" in the court of appeals in the first instance. *Cheney*, 542 U.S. at 380. The writ must "not be used as a substitute for the regular appeals process." *Id.* at 380–81.

Granted, mandamus functions in practice as a limited form of interlocutory appeal. See *Martin v. United States*, 96 F.3d 853, 854 (7th Cir. 1996) ("When … mandamus is being sought against the judge presiding in the petitioner's case, it is realistically a form of interlocutory appeal … ."); see also *Ex parte Crane*, 30 U.S. (5 Pet.) 190, 193 (1831) (Marshall, C.J.) ("A

*mandamus* to an officer is said to be the exercise of original jurisdiction; but a *mandamus* to an inferior court of the United States, is in the nature of appellate jurisdiction."). Denying a petition to order the disqualification of counsel, we said loosely that the "standard of review" on mandamus is "narrower than in an ordinary appeal." *In re Sandahl*, 980 F.2d 1118, 1120 (7th Cir. 1992). We also emphasized the importance of the traditional requirements for mandamus, lest the writ degrade into "a route of appellate review functionally identical to the direct appeal of disqualification orders." *Id.* at 1121.

The holding of *Fowler*, allowing § 455(a) denials of recusal to be challenged on direct appeal, tends to undermine the logic of our application of a *de novo* standard of review for this type of mandamus petition. As we said in *Fowler*: "Factual or legal uncertainty means no mandamus." 829 F.3d at 793. But, since it was a direct appeal from a final judgment, *Fowler* did not expressly overrule the prior holdings on using a *de novo* standard for mandamus petitions.[2]

---

[2] All other circuits but one apply the deferential "clear and indisputable" standard of review for mandamus petitions in this context. See *In re Bulger*, 710 F.3d 42, 45–46 (1st Cir. 2013) ("Applying the mandamus rule to the substantive recusal standard thus requires a doubly deferential review: relief for the defendant is only warranted if it is 'clear and indisputable' that no reasonable reading of the record supports a refusal to recuse."); *In re Basciano*, 542 F.3d 950, 955 (2d Cir. 2008) ("A petition for a writ of mandamus based on a district judge's refusal to recuse himself requires that we consider both the standard for issuance of the writ and the standard for review of the recusal decision itself."); *In re Beard*, 811 F.2d 818, 826 (4th Cir. 1987) (mandamus can be used to supervise § 455(a) rulings, but petitioner must show "that he has 'no other adequate means to attain the relief he desires' and that his right to such relief is 'clear and indisputable'"); *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) ("[A] petition for writ of mandamus is an appropriate legal vehicle for

We do not need to resolve this tension over standards of review in this case. Our decision would be the same whether we applied the *de novo* standard or the more traditional "clear and indisputable right" standard that dominates mandamus jurisprudence.

IV. *Grounds Argued for Disqualification*

To the extent the ordinary standard for a writ of mandamus applies, a petitioner challenging a denial of a motion to

---

challenging the denial of a disqualification motion, but it is relief granted only in exceptional circumstances."); *Mischler v. Bevin*, 887 F.3d 271, 272 (6th Cir. 2018) (mem.) (mandamus to order recusal is granted "only when a petitioner alleges that delay will cause irreparable harm"); *In re Kansas Pub. Employees Ret. Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996) (in light of "the mandamus standard," the petitioner must establish "a clear and indisputable right to recusal"); *Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 998 (9th Cir. 2003) (petition for mandamus ordering recusal is denied absent "clear error" resulting from "usurpation of judicial power"); *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995) ("Although a district court's denial of a motion to recuse is reviewed for an abuse of discretion, because we are reviewing the district court's order by means of mandamus, the higher standard dictated by that writ governs our review." (citations omitted)); *In re Moody*, 755 F.3d 891, 898 (11th Cir. 2014) ("We ordinarily review a district judge's decision not to recuse for abuse of discretion. Because Mr. Moody has petitioned for mandamus, however, our review of Judge Coogler's failure to recuse is even more stringent." (citation omitted)); *Cobell v. Norton*, 334 F.3d 1128, 1139 (D.C. Cir. 2003) ("we will issue a writ of mandamus compelling recusal of a judicial officer where the party seeking the writ demonstrates a clear and indisputable right to relief").

The lone exception appears to be the Third Circuit. See *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) ("Judge Wolin's decision not to recuse himself must be reviewed [on mandamus petition] for an abuse of discretion, as it is, in effect, no different than an appeal from a district court's order denying recusal.").

recuse under 28 U.S.C. § 455(a) must show: (1) that review after final judgment will not provide an adequate remedy for the appearance of partiality; (2) the objective appearance of partiality is "clear and indisputable"; and (3) mandamus is otherwise appropriate under the circumstances. See *Sinovel Wind Grp. Co.*, 794 F.3d at 793.

As an initial matter, defendants have not presented any argument on the first or third prongs of the test for mandamus relief. The petition does not address why direct appeal after final judgment could not remedy any alleged error here. (The oversight suggests that defendants may not have been aware of our decision in *Fowler*. Citing *Balistrieri*, they argue that mandamus provides "the proper and sole remedy" for denials of recusals under § 455(a), even though *Fowler* overruled that holding in 2016. Relatedly, defendants believe that we review the district court's ruling *de novo*, again relying on case law tracing back to *Balistrieri*. See Petition at 4–5.)

Defendants' lack of argument on key elements of the standard would provide sufficient basis to deny their petition for extraordinary relief. We nevertheless address the central issue of apparent partiality because the standard of review is debatable and because we are reluctant to leave an unnecessary cloud hanging over the proceedings in the district court. We find that there was no reasonable question as to Judge Myerscough's impartiality on either ground offered by defendants.

A. *Illinois Innocence Project Fundraiser*

Both alleged grounds center on the career of Judge Myerscough's daughter, Lauren Myerscough-Mueller. It is worth reconstructing the precise timeline of Myerscough-Mueller's

employment alongside this civil lawsuit. Such a careful analysis is legally required: the "reasonable person" under § 455(a) is "well-informed about the surrounding facts and circumstances" and not "hypersensitive or unduly suspicious." *In re Sherwin-Williams*, 607 F.3d at 478, citing *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

Myerscough-Mueller graduated from Northwestern University School of Law in 2014. From March 2016 to May 2019, she worked at the Illinois Innocence Project, which has a mission to "correct miscarriages of justice in Illinois, educate the public about wrongful convictions and reform our state's criminal justice system." The Innocence Project has never represented Curtis Lovelace.

When Loevy & Loevy filed the civil complaint for Lovelace on May 5, 2017, it was inadvertently filed in the wrong division of the Central District of Illinois. The case was not transferred and assigned to Judge Myerscough until June 23, 2017. This error provides early evidence that no judge-shopping was going on. In November 2018, the case was reassigned to Judge Bruce for administrative reasons. Defendants make no suggestion of any apparent partiality based on that reassignment.

Thus, on March 30, 2019, Judge Myerscough was not handling Lovelace's case, and Myerscough-Mueller was still working at the Innocence Project in Springfield. Myerscough-Mueller had interviewed earlier that month for a new position with the University of Chicago's Exoneration Project, but she had not been offered the job yet. As of March 30, Judge Myerscough had no reason to expect she would be involved in the *Lovelace* case again. On that date, she and her daughter both attended the Innocence Project's annual fundraiser in

Springfield, along with many state and local officials and judges. Judge Myerscough did not attend in an official capacity, though she was briefly acknowledged along with other dignitaries. At the fundraiser, Lovelace and about thirty other "exonerees" were invited on stage to be honored. Some exonerees had been named in the event program, but Lovelace had not.

We conclude that no "objective, disinterested observer" could "entertain a significant doubt that justice would be done in the case" based on the Innocence Project fundraiser. See *Herrera-Valdez*, 826 F.3d at 917. Judge Myerscough's attendance at an event organized by her daughter's employer, without any prior knowledge that Lovelace would be mentioned, and where she had no reason to expect further involvement in the *Lovelace* civil case, does not raise any reasonable question of bias.

To be sure, under quite different circumstances, a judge's more extensive involvement with charitable fundraising efforts and with organizations that regularly engage in litigation can present disqualification issues. Canon 4 of the Code of Conduct for United States Judges states: "A judge may engage in extrajudicial activities that are consistent with the obligations of judicial office." Several more detailed provisions of Canon 4 are relevant here. Canon 4C allows a judge to assist in planning fundraising activities for non-profit law-related, civic, charitable, educational, religious or social organizations. A judge may even be listed as an officer, director, or trustee. But a judge may not actually solicit funds for such an organization except from members of the judge's own family and other judges over whom the judge exercises no supervisory or appellate authority. *Id*. A judge may attend

fundraising events for such organizations but may not be a
speaker, guest of honor, or featured on the program of such
an event. Cmt. to Canon 4C. Further guidance teaches that
judges should not serve as officers of organizations that regu-
larly engage in litigation, but not that they must have no con-
tact with such organizations. Canon 4B(1); Advisory Op. No.
40 (June 2009). In this case, Judge Myerscough's mere attend-
ance at the Innocence Project dinner fell well within permissi-
ble involvement with charitable and law-oriented organiza-
tions. The brief recognition of Lovelace at the dinner did not
require her recusal.

B.   *Exoneration Project Employment*

Shortly after that March 30, 2019 dinner, Myerscough-
Mueller changed jobs. The Exoneration Project, after a com-
petitive hiring process in which nine candidates were inter-
viewed, offered her a job on April 3, 2019, and she accepted it.
She started at the Exoneration Project a month later, on May
6, 2019.

In the meantime, while Myerscough-Mueller was com-
pleting her final month at the Innocence Project, the *Lovelace*
civil case was again assigned to Judge Myerscough after
Judge Bruce recused on plaintiffs' motion. Defendants do not
question the basis for Judge Bruce's recusal or the timing of
the motion. They disclaim any "insinuation that the Exonera-
tion Project had hired Judge Myerscough's daughter in an ef-
fort by Plaintiffs' counsel to ingratiate themselves to the
court." Petitioners' Reply at 2. We agree and see no basis for
a reasonable observer to draw such a conclusion.

Defendant-petitioners are left, then, with this: My-
erscough-Mueller works as a salaried staff attorney for an

organization funded by plaintiffs' counsel. To be sure, the ties between Loevy & Loevy and the Exoneration Project are close. Loevy & Loevy issues the paychecks for Exoneration Project employees. Several Loevy & Loevy attorneys split their time with the Exoneration Project, including most notably Jonathan Loevy and Tara Thompson, plaintiffs' named counsel in this lawsuit. In their role as Exoneration Project attorneys, not Loevy & Loevy attorneys, Loevy and Thompson defended Lovelace in his second criminal trial. That trial took place in March 2017, long before Myerscough-Mueller joined the Exoneration Project.

Let us assume, out of an abundance of caution, that the distinction between Loevy & Loevy and the Exoneration Project bears no weight, so that Myerscough-Mueller should be deemed an employee of Loevy & Loevy for these purposes. She has never represented Lovelace and does not represent him now, even if she were deemed a salaried attorney at the firm that represents Lovelace. She has been screened from any involvement in cases before Judge Myerscough, including the *Lovelace* matter. These circumstances, without more, do not call for recusal.

We have expressed doubts about recusal under § 455(a) when the more detailed provisions of § 455(b) clearly allow the judge to sit: "The care with which [the § 455(b)] rules are drafted should make a court hesitate to treat the general language of § 455(a) as a bar to judicial service whenever a relative has 'something to do with' a party … ." *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988). An adult child's working on salary for a litigant's law firm or a government office (such as a U.S. Attorney's office prosecuting cases

before the judge) would not suffice to disqualify Judge My-erscough under § 455(b).

In relevant part, § 455(b) requires recusal only if a judge's close relative is "acting as a lawyer in the proceeding" or is known "to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(ii) & (iii). Neither criterion would be met here. My-erscough-Mueller is not a lawyer in the *Lovelace* suit. Even if she were a salaried employee of the firm itself, she would lack any substantial interest in the outcome of the case. See *Jenkins v. Arkansas Power & Light Co.*, 140 F.3d 1161, 1165 (8th Cir. 1998) (recusal not required where judge's son was "a salaried associate who would not be substantially affected by the out-come"); *Nobelpharma AB v. Implant Innovations, Inc.*, 930 F. Supp. 1241, 1267 (N.D. Ill. 1996) (recusal not required where judge's daughter was salaried partner, not equity partner, in law firm representing party before judge); Compendium of Selected Opinions § 3.2-4 (regarding government attorneys related to judges).

The lack of a § 455(b) violation is instructive but not con-clusive: "Affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a)." *In re National Union*, 839 F.2d at 1229. "§ 455(a) is generally under-stood to encompass the situations outlined in § 455(b), but also a broader range of situations in which impartiality exists, but its appearance is compromised." *Herrera-Valdez*, 826 F.3d at 918. So we must return to the original inquiry: whether My-erscough-Mueller's employment creates an appearance of partiality in the eyes of an objective, well-informed, thought-ful observer. See *In re Mason*, 916 F.2d at 386.

It does not. The fact that a relative works at a law firm representing a party is not enough. There would need to be some aggravating circumstance, and there is none here. The Code of Conduct again provides guidance: "The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself disqualify the judge." Cmt. to Canon 3C(1)(d)(ii). We have found something extra that required recusal where the judge's child worked on the linked prosecution of a co-conspirator, *In re Hatcher*, 150 F.3d at 638, and where the judge's brother was an equity partner in a firm litigating before the judge, *SCA Services*, 557 F.2d at 116. On the other hand, we found no need for recusal where the judge's son provided market-rate legal services to a litigant in an unrelated matter. *In re National Union*, 839 F.2d at 1229. Here, defendants have pointed to nothing beyond the bare fact of Myerscough-Mueller's employment that poses a risk of bias. The judge's benign attendance at the earlier Springfield dinner does not rise to that level of something extra.

Defendant-petitioners have not shown that they are entitled to the extraordinary remedy of a writ of mandamus, and the record does not show a reasonable basis to question Judge Myerscough's impartiality. The petition is therefore

DENIED.