Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2023 01:06 AM CDT

State of Nebraska, appellee, v.
John C. Ezell, appellant.
___ N.W.2d ___

Filed August 4, 2023.    No. S-22-411.

1. **Judges: Recusal: Appeal and Error.** A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Sentences.** Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.

5. **Sentences: Appeal and Error.** For a defendant who has been sentenced consecutively for two or more crimes, appellate courts generally consider the aggregate sentence to determine if it is excessive.

6. **Constitutional Law: Sentences: Appeal and Error.** Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law, which an appellate court resolves independently of the lower court's decision.

7. **____: ____: ____.** When conducting a proportionality review under the Eighth Amendment, each sentence is considered individually to determine whether it was grossly disproportionate to the crime. The issue on review is whether the defendant received an appropriate sentence.

8. **Judges: Recusal: Appeal and Error.** Appellate review of the district court's denial of a motion for disqualification is a proper subject for review on appeal only once a judgment has been rendered or a final order has been made.

9. **Judges: Recusal.** It is a judge's duty to disqualify himself or herself whenever the judge's impartiality might reasonably be questioned. This duty exists even in the absence of a motion by a party and continues throughout the proceedings.

10. **Judges: Recusal: Waiver.** A party cannot waive the disqualification of a judge due to the judge's personal bias or prejudice toward the party or the party's lawyer.

11. **Judges: Recusal.** Absent any direct personal connection to the proceeding, a judge's disqualification is not required as a matter of law.

12. **Sentences: Appeal and Error.** In reviewing a sentence, an appellate court does not employ its discretion; instead, it reviews the sentence for abuse by the trial court of its discretion.

13. **Trial: Courts: Judgments.** When a trial court exercises its discretion within the limits prescribed by law, that judgment cannot be controlled in the absence of an abuse of discretion.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

INTRODUCTION

John C. Ezell appeals from the district court's overruling of his motion for disqualification and his sentences following his no contest pleas to four felony charges in relation to an officer-involved shooting. Finding no error by the district court, we affirm.

## FACTUAL BACKGROUND

*Circumstances of Offenses.*

All four felony charges to which Ezell pleaded no contest stem from the same incident. We recount the circumstances of the incident as set forth in the factual basis presented at the plea hearing, which was set forth by the State and supplemented by Ezell.

Three officers of the Omaha, Nebraska, police department gang unit wanted to search the vehicle of an individual designated as a gang-affiliated person or known gang member, in response to a tip that the individual was a prohibited person in possession of a firearm. The officers located the individual's vehicle around the Miller Park area, which is known to the gang unit as "Killer Park." The officers drove an unmarked black sedan with tinted windows and civilian license plates. The officers were not in uniform; rather, they wore black ballistic vests that had a 2-inch by 4-inch patch on the front that read "Police."

The individual's vehicle was parked, seemingly with the engine running, in front of a fire hydrant when the officers approached the vehicle on foot. The officers did not know Ezell was in the vehicle. As they approached the vehicle and before the officers made any contact, the vehicle drove away at a normal rate of speed. As the officers returned to their unmarked sedan, they exchanged comments, including "[T]hey didn't see us" and "I don't think they knew we were cops." The officers followed the vehicle in their unmarked sedan.

After about three blocks, when the vehicle stopped at a stop sign, one of the officers exited the unmarked sedan, approached the vehicle, and placed a "stop stick" under one of the vehicle's tires to deflate it. As a result, the vehicle rounded the corner and stopped after traveling no more than a few car lengths. The unmarked sedan was equipped with small police lights on one of its visors as well as with a siren. Although it is not entirely clear from the factual basis, the

record from the sentencing hearing suggests the small police lights were employed, while the siren was not.

The officer who placed the stop stick approached the vehicle's passenger side and blocked the door. The officer did not announce his identity or issue any commands. The officer heard Ezell state, "[W]hat's going on[?]" Ezell discharged a firearm, which resulted in an injury to the officer that was described as "a flesh wound." Ezell then exited the vehicle, which the officers perceived to be an attempt to flee.

The two other officers exited the unmarked sedan and discharged their firearms at Ezell. Ezell responded by discharging his firearm at one of the two officers. Ezell was struck by the officers' fire. The police apprehended Ezell and recovered the firearm. It was undisputed that at the time of the incident, Ezell was a person legally prohibited from possessing a firearm.

Ezell asserted that he saw an armed man, dressed in black, who positioned himself in front of the passenger door and blocked it. Ezell maintained that he did not know the man was a police officer and believed he was being "carjacked." At least one lay witness who observed these events reported that she had been unable to identify any of the gang unit officers as police officers, based on their attire and unmarked sedan.

*Motion for Judicial Disqualification.*

After the information against Ezell was filed, it was assigned to the district court. Ezell timely filed a motion to disqualify the trial judge under Neb. Rev. Code of Judicial Conduct § 5-302.11. At the hearing on the motion, Ezell offered an affidavit in support, which was received by the court. Ezell averred, in part, that the officers were classified as "'victims'" of the crimes for which Ezell was charged and that he learned the trial judge was "married to a law-enforcement officer, specifically, an active, on-the-job Douglas County Sheriff's Deputy with extensive experience in criminal investigations and extensive professional relationships with other law-enforcement agencies/officials/officers in the Omaha, Douglas

County, Nebraska area." Ezell contended in his affidavit that because the trial judge's spouse was a law-enforcement officer, "and [because] the State alleges that [he] committed serious and violent crimes directly against law-enforcement officers, the circumstances of the matter demonstrate that the Judge's impartiality might reasonably be questioned." No other evidence was offered by Ezell or the State.

Ezell argued that because the victims were on-duty officers, a reasonable person viewing the circumstances, who had no vested interest in the outcome of the case, would question the court's impartiality. The State disagreed and argued that Ezell failed to produce any specific evidence showing that the judge could not be fair. The State reasoned that there was no appearance of impropriety, because the judge had no personal relationship with the victims and no personal interest in the outcome.

The court made no disclosures on the record[1] or any factual findings. It "considered the affidavit that has been presented here, [and] the argument." The court overruled Ezell's motion.

Ezell then filed an interlocutory appeal, which the Nebraska Court of Appeals dismissed for lack of jurisdiction because the order appealed from was not a final order. We denied Ezell's petition for further review.

*No Contest Pleas.*

Thereafter, Ezell pleaded no contest to four felony charges. After the State presented its factual basis, the court asked Ezell if there was anything he wished to add to the factual basis. Ezell contributed substantial additional factual details surrounding the incident. Neither party objected to any portion of the factual basis.

After the court accepted Ezell's pleas, the State provided, but did not offer, the court with video from body-worn cameras of two of the gang unit officers. The State told the

---

[1] See Neb. Rev. Code of Judicial Conduct § 5-302.11(C).

court that it intended to offer the videos at sentencing and make them a part of the presentence investigation. Ezell stated on the record that he had no objection to the State's providing the court with the videos or to the court's watching the videos before the sentencing hearing. The court received the videos as part of the presentence investigation. These videos were not offered or received at sentencing, included in the presentence investigation report (PSR),[2] or otherwise made a part of the record on appeal.

*Sentencing.*

At sentencing, the court stated it had received and reviewed the PSR. The bulk of the parties' arguments referenced the video evidence the State gave to the court at the plea hearing. Ezell played various video clips of officers' testimony, seemingly from depositions that were not offered and are not in the record on appeal. Ezell offered a copy of a digital media presentation utilized during his argument, as well as a letter of support, which the court received and made a part of the PSR. However, neither of these documents is in the PSR or otherwise in the appellate record.

Ezell's argument in mitigation was focused on the facts that at the time of the incident, Ezell believed he was a victim of a carjacking, and that his actions were reasonable considering the circumstances. For example:

> At that moment [the] Officer [approaching] does not identify himself as a police officer. He does not identify himself as a law enforcement agent. He doesn't say anything. He is a man dressed in black. He's emerged from an all black vehicle. He provides no notice of any kind that he's a police officer. And yet that is to be imputed to . . . Ezell.

The State countered that the carjacking theory was "ridiculous" and "appalling." It argued that Ezell showed "no

---

[2] See Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2020).

measure of remorse." Additionally, the State emphasized Ezell's criminal history to the court.

Relevant to Ezell's appeal, the court noted that Ezell was at a very high risk for reoffending; that his criminal history showed "multiple felonies, multiple gun charges, multiple resistance and non-cooperation with the law"; and that he was on federal supervised release at the time he committed the instant offenses. The court acknowledged:

> [There was] argument as to mitigation of these charges, but you do stand convicted of the . . . four felonies. And these four felonies involve violence. These four felonies have a wide range. And in determining what would be an appropriate sentence, [the court takes] into consideration everything that happened, everything that has happened since then, and your past criminal history.

The court stated that it had reviewed the videos, police reports, medical information, victim impact statements, and witness accounts and had fashioned a total sentence it thought appropriate under the circumstances, one that would not depreciate the seriousness of Ezell's actions or promote disrespect for the law.

The court sentenced Ezell to consecutive terms of incarceration for a total of 96 to 116 years'[3] imprisonment: 40 to 45 years' imprisonment for assault on an officer, a Class ID felony[4]; 26 to 30 years' imprisonment for attempted assault on an officer in the first degree, a Class II felony[5]; 10 to 16 years' imprisonment for possession of a deadly weapon (firearm) during the commission of a felony, a Class II felony[6]; and 20 to 25 years' imprisonment for possession of a deadly weapon by a prohibited person, a Class ID felony.[7] The

---

[3] See Neb. Rev. Stat. § 28-105 (Reissue 2016).

[4] Neb. Rev. Stat. § 28-929(2) (Reissue 2016).

[5] Neb. Rev. Stat. §§ 28-201(3)(a) (Reissue 2016) and 28-929.

[6] Neb. Rev. Stat. § 28-1205(2)(c) (Reissue 2016).

[7] Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2020).

district court stated that absent any loss of good time, Ezell will first be eligible for parole after he serves 51 years, and that his mandatory discharge date would be after he serves 61 years. Ezell filed a timely appeal, and we moved his appeal to our docket.[8]

## ASSIGNMENTS OF ERROR

Ezell assigns that the district court erred when it abused its discretion by (1) denying his motion to disqualify, (2) ordering him to serve excessive sentences, (3) ordering him to serve consecutive sentences, and (4) imposing sentences that constituted cruel and unusual punishment in violation of the Eighth Amendment.

## STANDARD OF REVIEW

[1] A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law.[9]

[2,3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[10] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[11]

[4,5] Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.[12] For a defendant who

---

[8] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[9] *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

[10] *State v. Hines*, 313 Neb. 685, 985 N.W.2d 625 (2023).

[11] *State v. Abligo*, 312 Neb. 74, 978 N.W.2d 42 (2022). See *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988).

[12] *State v. Canaday*, 307 Neb. 407, 949 N.W.2d 348 (2020).

has been sentenced consecutively for two or more crimes, we generally consider the aggregate sentence to determine if it is excessive.[13]

[6,7] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law,[14] which an appellate court resolves independently of the lower court's decision.[15] When conducting a proportionality review under the Eighth Amendment, each sentence is considered individually to determine whether it was grossly disproportionate to the crime.[16] The issue on review is whether the defendant received an appropriate sentence.[17]

## ANALYSIS

*Time to Appeal Denial of*
*Judicial Disqualification.*

As a preliminary matter, Ezell asserts that "there is a conflict in Nebraska law regarding the proper time for a criminal defendant to initiate an appeal from an adverse ruling regarding a motion to disqualify/recuse."[18] The State disagrees and correctly points out that the overruling of a motion to disqualify is not a final, appealable order.[19]

However, as Ezell points out, our prior case law contains the following proposition: "Once a case has been litigated, an appellate court will not disturb the denial of a motion to disqualify a judge and give litigants a second bite at the

---

[13] *State v. Morton*, 310 Neb. 355, 966 N.W.2d 57 (2021).

[14] *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019).

[15] *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023).

[16] See, *State v. Morton, supra* note 13; *State v. Becker, supra* note 14.

[17] See *State v. Morton, supra* note 13.

[18] Brief for appellant at 19.

[19] See, *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017); *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005).

apple."[20] This proposition predates our decision in *Heckman v. Marchio*,[21] where we unanimously abrogated the "*Richardson* exception,"[22] referring to a judicially constructed exception to the final order doctrine that allowed an interlocutory appeal from a denial of a motion to disqualify. Because we have abrogated that exception, the cited proposition is no longer a correct statement of law.

[8] Appellate review of the district court's denial of a motion for disqualification is a proper subject for review on appeal only once a judgment has been rendered or a final order has been made. In Ezell's case, as the Court of Appeals already determined, his interlocutory appeal was improper. However, Ezell's appeal after sentencing is from a judgment and, therefore, is properly before us now.

*Waiver of Judicial Disqualification.*

Before turning to the merits of Ezell's appeal, we first consider the State's argument that by entering his no contest pleas, Ezell waived his right to appeal from the district court's overruling of his motion to disqualify. It contends that Ezell waived his right to an impartial judge because the voluntary entry of a guilty plea or a plea of no contest waives "every defense to a charge, whether the defense is procedural, statutory, or constitutional."[23]

The right to an impartial judge is guaranteed under the Due Process Clauses of the U.S. and Nebraska Constitutions,

---

[20] *In re Interest of J.K.*, 300 Neb. 510, 517, 915 N.W.2d 91, 97 (2018). See, *State v. Buttercase, supra* note 9; *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013); *Tierney v. Four H Land Co.*, 281 Neb. 658, 798 N.W.2d 586 (2011); *McCully, Inc. v. Baccaro Ranch*, 279 Neb. 443, 778 N.W.2d 115 (2010); *CenTra, Inc. v. Chandler Ins. Co.*, 248 Neb. 844, 540 N.W.2d 318 (1995).

[21] *Heckman v. Marchio, supra* note 19.

[22] *Id.* at 464, 894 N.W.2d at 301. See *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997), *overruled, Heckman v. Marchio, supra* note 19.

[23] Brief for appellee at 18 (citing *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019)).

the parameters of which are coextensive.[24] "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'"[25] The U.S. Supreme Court has held that "[d]ue process guarantees 'an absence of actual bias' on the part of a judge"[26] and that even in the absence of actual bias, disqualification "is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'"[27] To determine whether the probability is too high, "the test requires only a showing of an undue risk of bias, based on the psychological temptations affecting an 'average judge.'"[28]

> An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself. When the objective risk of actual bias on the part of a judge rises to an unconstitutional level, the failure to recuse cannot be deemed harmless.[29]

[9] Moreover, while litigants normally need to take the initiative in litigation, judicial disqualification is an exception to the norm. The Nebraska Revised Code of Judicial Conduct says that a judge "shall perform all duties of judicial office

---

[24] *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019).

[25] *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 876, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (quoting *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955)).

[26] *Williams v. Pennsylvania*, 579 U.S. 1, 8, 136 S. Ct. 1899, 195 L. Ed. 2d 132 (2016) (quoting *In re Murchison, supra* note 25).

[27] *Rippo v. Baker*, 580 U.S. 285, 287, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)).

[28] *Echavarria v. Filson*, 896 F.3d 1118, 1128 (9th Cir. 2018) (citing *Caperton v. A. T. Massey Coal Co., supra* note 25).

[29] *Williams v. Pennsylvania, supra* note 26, 579 U.S. at 15-16.

fairly and impartially."[30] It is a judge's duty to disqualify himself or herself whenever "the judge's impartiality might reasonably be questioned."[31] This duty exists even in the absence of a motion by a party and continues throughout the proceedings.[32] Judges are under a continuing obligation to disqualify themselves whenever their impartiality may be reasonably questioned, and although a judge may initially be free from bias and prejudice, disqualification may well become necessary over the course of a proceeding.[33]

[10] As the Nebraska Revised Code of Judicial Conduct provides, a judge should disclose on the record any information that the judge believes the parties or their lawyers "might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification."[34] Upon such disclosure, particular enumerated grounds for disqualification can be waived by the parties after consideration "outside the presence of the judge and court personnel."[35] However, a party cannot waive the disqualification of a judge due to the judge's personal bias or prejudice toward the party or the party's lawyer.[36] It is a necessary component of due process.

*Merits of Ezell's Motion for Disqualification.*

Turning to the merits of Ezell's motion for disqualification, Ezell argues that the district court erred in denying his

---

[30] Neb. Rev. Code of Judicial Conduct § 5-302.2.

[31] Neb. Rev. Code of Judicial Conduct § 5-302.11(A).

[32] See Neb. Rev. Code of Judicial Conduct § 5-302.11, comment 2. See, also, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).

[33] See Neb. Rev. Code of Judicial Conduct § 5-302.11. See, also, *Caperton v. A. T. Massey Coal Co., supra* note 25.

[34] Neb. Rev. Code of Judicial Conduct § 5-302.11, comment 5.

[35] See Neb. Rev. Code of Judicial Conduct § 5-302.11(C).

[36] See Neb. Rev. Code of Judicial Conduct § 5-302.11(A)(1) and (C). See, also, *Fowler v. Butts, supra* note 32.

motion because the judge's spouse is an active-duty, on-duty law enforcement officer and the victims of the charged offenses are on-duty law enforcement officers. The State disagrees and contends that there was nothing more than a de minimis interest, which could not raise a reasonable question regarding the judge's impartiality, and that therefore, the judge did not err in overruling Ezell's motion.

"Impartial" means, in part, the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties."[37] A judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned, which can occur even in the absence of an enumerated circumstance.[38] Indeed, "a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply."[39] Thus, whether there is only a de minimus interest is not dispositive.

When evaluating a trial judge's alleged bias, the question is whether a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[40] In other words, the question is not simply whether someone could conceivably question a judge's impartiality.[41]

It is presumed that all judges in this state carry out all of their duties competently and diligently.[42] One such duty is that judges have a responsibility to "hear and decide

---

[37] Neb. Rev. Code of Judicial Conduct, Terminology.

[38] *State v. Buttercase, supra* note 9. See Neb. Rev. Code of Judicial Conduct § 5-302.11(A).

[39] Neb. Rev. Code of Judicial Conduct § 5-302.11, comment 1.

[40] *State v. Buttercase, supra* note 9.

[41] See *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019).

[42] See Neb. Rev. Code of Judicial Conduct § 5-302.5 (rev. 2018).

matters assigned to the judge, except when disqualification is required."[43] In so doing, every judge "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."[44] In addition:

> (A) A judge shall not be swayed by public clamor or fear of criticism.
>
> (B) A judge shall not permit family, social, political, financial, or other interests or relationships to influence the judge's judicial conduct or judgment.
>
> (C) A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.[45]

Accordingly, a defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[46]

Ezell contends that in the instant case, a reasonable person would question the trial judge's impartiality under an objective standard of reasonableness because the judge's spouse was a law enforcement officer with extensive relationships in the Omaha area. We understand Ezell's position to be that a reasonable person knowing this circumstance would question the impartiality of the judge because the judge's spouse could have been in the position of the victims of the charged crimes. At its core, Ezell's assertion is that such a circumstance creates an undue risk of implicit bias, such that the judge is biased or prejudiced as a matter of law.

But we decline to hold that a judge is disqualified as a matter of law whenever a victim of a crime has commonalities with someone in the judge's family. Absent a direct personal connection to the proceeding, we cannot conclude that a reasonable person who knew the circumstances of the case

---

[43] Neb. Rev. Code of Judicial Conduct § 5-302.7.

[44] Neb. Rev. Code of Judicial Conduct § 5-302.2.

[45] Neb. Rev. Code of Judicial Conduct § 5-302.4.

[46] *State v. Buttercase, supra* note 9.

would reasonably question a judge's impartiality.[47] "Extensive relationships" that do not include direct connections are not enough to create a reasonable specter of partiality or an undue risk of bias such that disqualification is required as a matter of law.

[11] A judge must disqualify himself or herself whenever the judge's impartiality might reasonably be questioned. However, absent any direct personal connection to the proceeding, a judge's disqualification is not required as a matter of law. Because neither the trial judge nor the judge's spouse had any direct personal connection to the proceeding, we find no error in the district court's decision.

*Sentencing.*

Ezell assigns that the district court abused its discretion by imposing excessive and consecutive sentences and that those sentences violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. It is undisputed that Ezell's sentences are within the statutory limits for each offense.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[48] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[49]

---

[47] See *U.S. v. Norwood*, 854 F.3d 469 (8th Cir. 2017) (quoting *Williams v. Pennsylvania, supra* note 26). See, also, *U.S. v. Williams*, 949 F.3d 1056 (7th Cir. 2020) (discussing cases).

[48] *State v. Hines, supra* note 10.

[49] *Id.*

While these factors should instruct a sentencing court, they do not comprise a mathematical formula that must be rigidly implemented.[50] Rather, they are among the relevant factors that may be considered.[51] A sentence should be tailored and based on factors that fit the offender and not merely the crime.[52] The appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[53]

Ezell asserts that the district court failed to consider, or oversimplified, the undisputed factual record; failed to consider the sentencing factors within Neb. Rev. Stat. § 29-2260(2) (Reissue 2016); and failed to sufficiently set forth its rationale for the sentences imposed. Additionally, Ezell avers that criminal defendants lack meaningful appellate review of the issue of excessive sentences in Nebraska and that the matter is simply a pro forma exercise of whether the sentence is within the statutory limits for the offense. He further urges us to employ a comparative approach in our review of sentences for the purpose of considering the proportionality of sentences under the Eighth Amendment, wherein the sentence of one offender would be compared to those of others for the same offense.

First, we disagree with Ezell that the district court gave insufficient consideration in fashioning his sentences. The record belies Ezell's assertions in this regard. The bill of exceptions of the sentencing hearing shows that the parties made extensive arguments before the district court and that the court had a thorough understanding of the record, Ezell's PSR, and the arguments made by both parties. Further, the court

---

[50] *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

[51] *Id.*

[52] *Id.*

[53] *State v. Johnson, ante* p. 20, 988 N.W.2d 159 (2023).

expressly considered the factors under § 29-2260(2) and fashioned sentences it thought appropriate under the circumstances, sentences that would not depreciate the seriousness of Ezell's actions or promote disrespect for the law.

As to Ezell's other arguments, we have already considered and discussed them in detail in *State v. Morton*.[54] Ultimately, Ezell misunderstands the role of an appellate court in reviewing sentences imposed by a trial court.

[12,13] It has long been recognized that sentencing is a matter that rests with the trial court.[55] In reviewing a sentence, an appellate court does not employ its discretion; instead, it reviews the sentence for *abuse* by the trial court of *its* discretion.[56] The Legislature has provided trial courts with significant discretion in sentencing, such as their discretion to impose 1 to 50 years' imprisonment for Class II felonies and their discretion to order sentences to be served consecutively or concurrently.[57] When a trial court exercises its discretion within the limits prescribed by law, that judgment cannot be controlled in the absence of an abuse of discretion.[58]

At argument, Ezell conceded that fashioning an appropriate sentence that is tailored to each individual offender is no easy task. It is certainly one that trial courts do not take lightly. Yet, the appropriateness of the sentence is necessarily a subjective judgment left mainly to the trial court's discretion, and the boundaries of that discretion are a matter for the Legislature.

We recognize that Ezell's aggregate sentence is substantial. So, too, is his criminal history and his risk of reoffending. We also recognize that the parties provided the district court with more information than is in the record on appeal.

---

[54] *State v. Morton, supra* note 13.

[55] See, e.g., *Geiger v. State*, 6 Neb. 545 (1877).

[56] See, e.g., *Morrison v. State*, 13 Neb. 527, 14 N.W. 475 (1882).

[57] See § 28-105.

[58] See, e.g., *Wright v. State*, 45 Neb. 44, 63 N.W. 147 (1895).

Our review for an abuse of discretion is key.[59] The standard is not what sentence we would have imposed.[60] As the U.S. Supreme Court has noted, "'[t]he law threatens certain pains if you do certain things, intending thereby to give you a new motive for not doing them. If you persist in doing them, it has to inflict the pains in order that its threats may continue to be believed.'"[61] On our review of the limited record, we cannot say that the district court abused its discretion.

## CONCLUSION

We conclude that the district court did not err in overruling Ezell's motion for disqualification and did not abuse its discretion in fashioning Ezell's sentences.

AFFIRMED.

---

[59] *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022), *cert. denied* ___ U.S. ___, 143 S. Ct. 404, 214 L. Ed. 2d 201 (2022).

[60] *State v. Gibson*, 302 Neb. 833, 925 N.W.2d 678 (2019).

[61] *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (quoting Oliver Wendell Holmes, Jr., The Common Law 40 (Mark D. Howe ed. 1963)).