IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STILLMOCK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
EUGENE E. STILLMOCK, APPELLANT.

Filed January 23, 2024.    No. A-23-461.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge, on appeal thereto from the County Court for Douglas County: JEFFREY L. MARCUZZO, Judge. Judgment of District Court affirmed.

Thomas C. Riley, Douglas County Public Defender, and Rebekah S. Keller for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Eugene E. Stillmock appeals from the district court's order affirming his convictions and sentences for damage to property and disturbing the peace after a bench trial before the county court. Stillmock challenges the sufficiency of the evidence to sustain his convictions and alleges that the county court imposed an excessive sentence. For the reasons set forth below, we affirm.

## II. BACKGROUND

On October 17, 2022, Stillmock was charged by complaint in the county court for Douglas County with damage to property, a violation of § 20-158 of the Omaha Municipal Code, and disturbing the peace, a Class III misdemeanor, pursuant to Neb. Rev. Stat. § 28-1322 (Reissue 2016). A bench trial was held in the county court on February 27, 2023.

Christen Funk testified that she had known Stillmock for several years and had dated him for 8 months before their relationship ended in September 2022. Funk described their relationship thereafter as "extremely volatile." She testified that she obtained a domestic abuse protection order against Stillmock because she was afraid for her life. Stillmock had not yet been served with this protection order when the events underlying his current charges occurred.

On October 14, 2022, Funk was walking through her home when she saw something "out of the corner of [her] eye." Upon further inspection, Funk discovered that Stillmock was standing outside of her bedroom window and that the window had been partially opened. She took out her phone and began recording Stillmock. The recording was posted as a video on the social media platform TikTok and includes the following language: "Little tweaker came to peek / To harass and cause a stink." In the video, it appears that Stillmock is conversing with Funk, but any conversation between Funk and Stillmock is indiscernible because the audio has been replaced with music. Funk testified that she recorded this encounter because she wanted proof that Stillmock was harassing her.

Funk testified that she told Stillmock that he needed to leave several times, but he refused. At some point, Funk stopped recording, went to her kitchen, and retrieved a knife. She testified that she grabbed the knife because she was "terrified" of Stillmock, as he had strangled her three times in the month prior.

Funk returned to her bedroom with the knife, waved it in Stillmock's direction, and told him again to leave. A scuffle ensued with Stillmock extending his arms through the open window. Stillmock pushed on the dresser sitting next to the window, causing it and the television on top of it to tip over and fall. Funk testified that as a result, the television was "scratched up a little" and the dresser was "massively broken." She further testified that after the furniture fell, Stillmock grabbed the sharp edge of the knife, received an injury, said "[t]hat'll do," and ran away. Later, Funk noticed that Stillmock had moved a bucket from her front door area to the area below her bedroom window. Funk believed that Stillmock had been standing on the bucket when they interacted through the window and that the bucket damaged the exterior of her home. She testified that the house's siding near her bedroom window was "caved in," creating a "big dent."

Funk testified that because of this encounter with Stillmock, she has been unable to sleep, focus on work, or maintain normal relationships. During cross-examination, Funk also testified that she was home alone during this incident.

Funk called the police after Stillmock ran. Omaha Police Officer Chad Dalrymple was dispatched to her home. He testified that Funk informed him of the encounter with Stillmock and showed him the TikTok video, the damage to the exterior of her home, and the overturned dresser and television. Dalrymple did not observe the television screen or the front of the dresser and, therefore, did not see what level of damage was inflicted on either piece of furniture. Dalrymple testified that Funk was upset but remained calm during their conversation. He testified that he knew she was upset because her hands were shaking slightly, and she told him that this sort of incident had happened before. Dalrymple also testified that another woman was inside the residence when he arrived. The woman told him that she did not observe the incident but heard portions of it. She stated she had been sleeping on the couch prior to the incident.

Omaha Police Officer Matt Skradski was also dispatched to Funk's home and arrived shortly after Dalrymple. Funk described her encounter with Stillmock to Skradski and showed him

the overturned dresser as well as the damaged siding. Skradski had responded to calls from Funk's home in the past and noted on cross-examination that he had not noticed a dent in the home's siding before October 14, 2022. He described Funk as "fairly calm" during their conversation.

While both officers were at Funk's home, dispatch informed them that Stillmock was calling from a hotel that was roughly a mile and a half from Funk's home and was reporting an injury. Skradski left Funk's home to respond to Stillmock's call. Stillmock told Skradski that he went to Funk's home to obtain proof that there was an animal inside the residence in violation of the rental company's policies. He claimed that while at her home, Funk had cut him. The officers later learned that Stillmock had a protection order against Funk. Both officers found it odd that Stillmock went to Funk's residence when he had a protection order against her.

At the conclusion of the State's case, Stillmock moved to dismiss both charges against him, arguing that the State failed to establish its prima facie case for either charge. The county court denied Stillmock's motion. Stillmock declined to introduce any evidence in his defense and rested his case. After both parties made their closing arguments, the county court made the following findings:

> I find . . . Funk's testimony to be credible, and the officers' testimony to be credible. I think what Mr. Stillmock's doing here is trying to manipulate the system and disturb the peace of the victim. It's quite clear he's trying to get in that window. He didn't make it. That's all there is to that. The damage to the property -- well, you know, Ms. Funk testified that there is scratches. The furniture is knocked over. The city ordinance talks about tampering with or damaging property. That definitely fits here. And disturbing the peace, Ms. Funk testified to her terror that she felt at the time.

The court then found Stillmock guilty of damage to property and disturbing the peace.

The county court immediately moved from trial on to sentencing. Stillmock's trial counsel did not object, stating, "there's no reason not to go forward with sentencing," and requested a sentence of a fine or probation. The State objected to immediate sentencing and requested that a full presentence investigation be ordered. The State referenced portions of Stillmock's criminal history, including a strangulation conviction in 2018 and a subsequent violation of post-release supervision. The court denied the State's request and then proceeded to make the following remarks:

> Mr. Stillmock, [] I firmly believe that what you're doing is just an attempt to manipulate people and the system. Back in 2006, you're convicted of a domestic violence crime; 2007 a domestic violence crime; 2000 -- the felony is domestic violence; and here we are again. All you're doing is trying to terrorize Ms. Funk. This -- what I heard about trying to see if she's violating some dog thing, I think is nothing but a bunch of hooey. I think you know exactly what you're trying to do, and it's to serve your purpose of terrorizing someone else.

The court sentenced Stillmock to 180 days' imprisonment on the damage of property charge and 90 days' imprisonment on the disturbing the peace charge. The sentences were ordered to be served concurrently, and Stillmock was given credit for four days served.

Stillmock appealed his convictions and sentences to the district court. In his statement of errors, Stillmock asserted that the evidence was insufficient to support either of his convictions

- 3 -

and that the county court had abused its discretion by imposing an excessive sentence. The district court heard oral arguments on May 2, 2023. On May 26, the district court entered an order affirming Stillmock's convictions and sentences. The court found that there was no error on the record and that, when weighing the evidence in the light most favorable to the State, any rational trier of fact would have found the essential elements of the two crimes beyond a reasonable doubt. Further, the court did not find that Funk's testimony conflicted with the officers' testimonies.

In regard to Stillmock's excessive sentence claim, the district court found that the sentences imposed were within the statutory limits and that the county court did not abuse its discretion in sentencing Stillmock. The district court stated:

[T]he evidence shows Mr. Stillmock obtained a domestic abuse protection order against Ms. Funk. Yet, he goes to her residence and opens her window suggesting he is not afraid of Ms. Funk. Further, he is convicted of damaging Ms. Funk's property as she is waving a knife at him and asking him to leave. He grabs at the knife and receives an injury. The testimony shows at this time Mr. Stillmock makes a comment, "That'll do." It is only after obtaining this injury that Mr. Stillmock leaves. He then proceeds to call the police to report Ms. Funk assaulted him. [The county court's] statements suggest [it] found that Mr. Stillmock went to Ms. Funk's residence for the purpose of trying to game the system and get Ms. Funk in trouble. Ms. Funk had applied for a domestic abuse protection order against Mr. Stillmock that had not yet been served at the time of this incident. Because of the evidence, findings made by [the county court] and statements about several prior convictions for domestic violence charges against Mr. Stillmock, this court does not determine the sentence imposed was excessive.

Stillmock appeals.

## III. ASSIGNMENTS OF ERROR

Stillmock assigns, summarized and restated, that (1) the evidence was insufficient to support his convictions for damage to property and disturbing the peace, and (2) the county court abused its discretion by imposing an excessive sentence. Stillmock assigns that for these same reasons, the district court erred in affirming the county court's judgment.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that

conviction. *State v. Buol, supra*. In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *Id.* Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

In his brief on appeal, Stillmock challenges the sufficiency of the evidence to support his convictions for damage to property and disturbing the peace. We address each argument in turn.

### (a) Damage to Property

Stillmock was charged with damage to property pursuant to § 20-158 of the Omaha Municipal Code. When a defendant appeals a conviction and sentence under a municipal ordinance, claiming that the evidence is insufficient for a conviction and that a sentence is excessive, an appellate court's consideration of the assignments of error requires an examination of the specific ordinance involved. *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). An appellate court will not take judicial notice of a municipal ordinance not in the record, but, instead, assumes that a valid ordinance exists and that the evidence sustains the findings of the trial court. *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998). However, where the transcript certified by the clerk of the county court contains a copy of the long-form complaint containing the charges against the defendant, an appellate court may assume, in the absence of any showing to the contrary, that the material allegations in the complaint reflect the substantive content of the ordinances the defendant was charged with violating. *Id.*

The ordinance used to charge Stillmock does not appear in our record. However, the record contains the complaint setting forth the charge against Stillmock. Neither party argues that the complaint does not reflect the substance of the ordinance that Stillmock was charged with violating. Thus, the record sufficiently establishes the basis of Stillmock's conviction for our review.

Stillmock was convicted of "purposefully or knowingly tamper[ing] with or damag[ing] [Funk's property]" in violation of § 20-158 of the Omaha Municipal Code. Stillmock first argues that the officers' testimonies contradicted Funk's testimony many times and that the county court committed clear error by ignoring these credibility concerns. We reiterate that when analyzing sufficiency of the evidence, appellate courts do not resolve conflicts in the evidence or pass on the credibility of witnesses. See *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023). The county court specifically stated that it found the testimony of Funk and the two police officers to be credible. Pursuant to our longstanding precedent, we decline Stillmock's request that we review the credibility findings of the county court who heard and observed the witnesses' testimony.

Stillmock further argues that the State did not prove that Funk's property was damaged and failed to show he purposefully or knowingly damaged Funk's property. However, the evidence presented at trial was that Stillmock pushed over Funk's dresser, causing the dresser and the television to fall over. Funk testified that as a result, the television was "scratched up a little" and the dresser was "massively broken." Additionally, Funk and Skradski both testified that the siding of Funk's home was damaged, with Skradski explaining that prior to October 14, 2022, he had not noticed a dent in the siding. Stillmock also argues that the State failed to show that he tampered with Funk's property. We note that the complaint charges Stillmock with "tamper[ing] with or damag[ing] [Funk's property]," not tampering with and damaging her property. As such, the State was only required to prove one of the two acts. However, even if both were required, we find that the evidence supports a finding that Stillmock tampered with Funk's property as well.

Overall, the county court found that Funk's testimony was credible, and as stated above, it is not our role to reweigh the evidence or pass on the credibility of witnesses. The question before us is whether any rational fact finder could find the essential elements of the crime beyond a reasonable doubt. Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Stillmock "purposefully or knowingly tampered with or damaged [Funk's property]." The evidence offered at trial was, therefore, sufficient to support Stillmock's damage to property conviction.

### (b) Disturbing the Peace

Stillmock was charged with disturbing the peace, a Class III misdemeanor, pursuant to § 28-1322(1), which provides, "[a]ny person who shall intentionally disturb the peace and quiet of any person . . . commits the offense of disturbing the peace." The plain language of § 28-1322 does not require proof that Stillmock intended to disturb the peace of others; it requires only that his intentional acts resulted in disturbing the peace of others. See *State v. Thomas*, 25 Neb. App. 256, 904 N.W.2d 295 (2017). Accordingly, the question is whether a rational fact finder could find that Stillmock's intentional actions disturbed Funk's peace.

Viewing the evidence in a light most favorable to the State, we conclude that a rational fact finder could find that Stillmock's intentional actions disturbed Funk's peace. The evidence is that Stillmock intentionally appeared at Funk's residence without an invitation, that he refused to leave after Funk asked him to do so several times, and that he pushed over Funk's dresser and television. Funk testified that she was terrified during this incident and brandished a knife to protect herself. Additionally, since this incident, she has been unable to sleep, focus on work, or maintain normal relationships. This evidence is sufficient for a rational fact finder to conclude that Stillmock's actions disturbed Funk's peace.

### 2. EXCESSIVE SENTENCE

Stillmock assigns that the county court erred in imposing excessive sentences. Specifically, he contends that the court failed to give sufficient weight to mitigating factors. Upon our review of the record, we find no abuse of discretion in the sentences imposed.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the

sentence to be imposed. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.*

While these factors should instruct a sentencing court, they do not comprise a mathematical formula that must be rigidly implemented; rather, they are among the relevant factors that may be considered. *Id.* A sentence should be tailored and based on factors that fit the offender and not merely the crime. *Id.* The appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Stillmock was convicted of damage to property, a violation of the Omaha Municipal Code, and disturbing the peace, a Class III misdemeanor. See § 28-1322. The court sentenced Stillmock to 180 days' imprisonment on the damage to property conviction and 90 days' imprisonment on the disturbing the peace conviction. According to the record, damage to property in violation of the Omaha Municipal Code is punishable by up to 6 months' imprisonment, or a $500 fine, or both. A Class III misdemeanor is punishable by up to 3 months' imprisonment, or a $500 fine, or both. Neb. Rev. Stat. § 28-106 (Cum. Supp. 2022). Because Stillmock's sentences are within the statutory limits, we review his sentences for an abuse of discretion.

Stillmock contends that the county court failed to consider the sentencing factors listed above. We disagree. The record reflects that the county court considered relevant factors. After conducting a bench trial and considering all the evidence, the county court determined that Stillmock went to Funk's home on October 14, 2022, with an intent to "manipulate people and the system." The district court interpreted the county court's statement as a finding that Stillmock intended to "game the system and get . . . Funk in trouble." We agree with this interpretation. The combination of Stillmock's presence at Funk's home despite his protection order against her and Funk's testimony that Stillmock grabbed the knife, said "[t]hat'll do," and then fled, led the county court to conclude that Stillmock went to Funk's home with the intent to fabricate a hostile encounter with her. The county court found that Stillmock's statements to responding officers about inspecting Funk's home for a rental violation was a façade to mask his true intentions. As this was Stillmock's inferred motivation for the offense, the county court properly considered it when sentencing Stillmock.

The record reflects that the county court also considered Stillmock's criminal history and the nature of his current offenses. During sentencing, the State noted that Stillmock had previously been convicted of strangulation in 2018. The court also recited some of Stillmock's prior convictions, noting that in both 2006 and 2007, Stillmock had been convicted of "domestic violence crime[s]." The court stated that Stillmock was repeating a domestic violence pattern by attempting to "terrorize" Funk.

While the county court may not have explicitly stated that it considered other sentencing factors, it was not required to do so. The Nebraska Supreme Court has rejected the notion that a court does not adequately consider sentencing factors when it does not discuss each one of them during the sentencing hearing or in its sentencing order. See, *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021); *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Stillmock also argues that the county court's failure to order a presentence investigation constitutes an abuse of discretion. We first note that Stillmock did not request a presentence investigation report. In fact, Stillmock through counsel indicated that no report was needed. Generally, an appellate court will not consider an argument or theory raised for the first time on appeal. *Saylor v. State*, 315 Neb. 285, 995 N.W.2d 192 (2023). We also note that presentence investigation reports are mandatory only in felony cases. See, Neb. Rev. Stat. § 29-2261(1) and (2) (Cum. Supp. 2020); *State v. Qualls*, 284 Neb. 929, 824 N.W.2d 362 (2012). A trial court may, but is not required to, order presentence investigation reports in cases with Class III misdemeanors. § 29-2261(2); *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005). Stillmock was convicted of a Class III misdemeanor and a municipal code violation, meaning that the county court could have, but was not required to, order a presentence investigation.

After reviewing the record, we can find no abuse of discretion in the district court's decision to affirm the sentences imposed by the county court.

## VI. CONCLUSION

For the reasons set forth above, we affirm the decision of the district court that affirmed Stillmock's convictions and sentences.

AFFIRMED.