IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MAPP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

IZAYAH I. MAPP, APPELLANT.

Filed December 10, 2024.    No. A-23-724.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

James K. McGough, of McGoughLaw, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Izayah I. Mapp appeals his conviction in the district court for Douglas County for kidnapping, robbery, and use of a weapon (firearm) to commit a felony. He challenges the court's denial of his motion for mistrial and his related request for a limiting instruction. Based on the reasons that follow, we affirm.

## BACKGROUND

Mapp was charged with kidnapping, a Class II felony; robbery, a Class II felony; and use of a deadly weapon (firearm) to commit a felony, a Class IC felony. These charges arose from an incident where Mapp used a firearm to demand money from Braxton Stanfield and transported him to two different locations while trying to locate the money.

*Motion in Limine.*

Prior to trial, Mapp filed a motion in limine seeking an order to prevent the State from eliciting or admitting any evidence or testimony regarding a charge against Mapp for first degree murder of Franco Vasquez in a separate case. During the hearing on the motion, Mapp argued that knowledge of another investigation or other accusation involving a more serious charge was highly prejudicial to him and not relevant to the ultimate determination. Mapp agreed there was overlap between the two cases and investigations because they involved some of the same witnesses. The State agreed the murder charge against Mapp in the separate case was not relevant to this case. It argued, however, that a threat he made to Stanfield that he would do to Stanfield what he did to Vasquez was relevant. The State contended that Mapp's threat was relevant to the elements of the kidnapping and robbery charges, and it explained that Stanfield did not report the crimes to police out of fear of retaliation. Mapp agreed the threat may be admissible to explain why Stanfield did not immediately report the crimes.

Following the hearing on the motion in limine, the district court concluded that the jury should not be exposed to the fact that Mapp was charged with first degree murder, along with other charges, in a separate case, but the State should be permitted to present a coherent picture of the investigation in the present case. The court specifically ordered:

> [T]he State shall be prevented from adducing evidence or making argument that [Mapp] has been charged with additional crimes in [a separate case]. However, the State shall be permitted to adduce testimony that the police initiated contact with Stanfield so as to speak with him regarding information they had received that he had been the victim of a robbery.

The district court noted that permitting such testimony did not implicate Mapp in any other criminal activity and it explained why the police initiated contact with Stanfield. It found that allowing such testimony did not violate the hearsay rule, it was relevant, and was not unfairly prejudicial.

*Jury Trial Evidence.*

Stanfield had lived most of his life with his grandmother in Omaha, but he also spent time at his mother's home which was also in Omaha. In the early morning hours of October 11, 2021, Stanfield was at his mother's house playing video games and watching YouTube with his friend, Braxton Swift. Stanfield was 17 years old at the time.

Around 2 a.m., Swift received a phone call from Mapp, who was also a friend of Stanfield's. Mapp wanted to come over, but because Stanfield did not typically allow friends over to his mother's house, Stanfield suggested the three of them go to his grandmother's house.

During the call, Mapp mentioned that he wanted to buy a pair of shoes from Stanfield that he had previously been thinking about buying, and Stanfield agreed to selling Mapp the shoes. Stanfield told Mapp to pick him up at his mother's house, and they would go over to his grandmother's house, do the transaction, and play video games.

Mapp arrived at Stanfield's mother's house a short time later in a vehicle with two other males whom Stanfield had never met, and he was not expecting Mapp to have other people with him. Swift got into the backseat of the vehicle behind the driver, Stanfield sat in the middle of the

backseat, and Mapp got into the backseat on the passenger side of the vehicle. One of the individuals Stanfield did not know was driving and the other individual was in the front passenger seat. He introduced himself as "Nu."

As they started driving, Mapp said he wanted to stop by his house so he could get cash to pay for the shoes, then they would go to Stanfield's grandmother's house. When they stopped at Mapp's house, Mapp went inside while everyone else waited in the car. Stanfield stated he did not suspect anything unusual because Mapp was his friend. After a short time, Mapp returned to the vehicle, and they drove over to Stanfield's grandmother's house.

When they arrived at Stanfield's grandmother's house, Mapp got out of the vehicle, and when Stanfield started to get out, Mapp was standing at the car door holding a gun. Mapp told Stanfield to get out of the car and that he wanted "the money." At first, Stanfield thought Mapp was joking, and he started to laugh but Mapp stated, "No, I'm not playing. I need all that money. Go get the money," and he put the gun closer to Stanfield.

The money Mapp was referring to was $35,000 that had recently been returned to Stanfield's grandmother from a bond she had posted. Stanfield testified he had previously talked about the bond money with his friends and led them to believe that he had the money.

Stanfield, Mapp, and Nu started walking up the driveway toward the front door of his grandmother's house. Mapp was behind Stanfield with the gun. When they got to the front door, Mapp told Stanfield to open the door. At this point, Stanfield heard the dogs inside the house barking, and he asked Mapp and Nu not to shoot the dogs. Stanfield was also concerned for his grandmother's safety and did not want to let them inside. Mapp and Nu kept demanding to go inside so Stanfield told them the money they were looking for was at his mother's house.

When Stanfield told Mapp the money was at his mother's house, he led Stanfield back to the vehicle and made him get inside while continuing to hold the gun. Upon returning to the car, the driver, Nu, and Mapp began hitting Stanfield with closed fists.

As they drove back to his mother's house, Mapp, Nu, and the driver made statements such as, "There better be something there. We better not be doing this for no reason." Stanfield took these statements to mean if they did not find the money, something bad was going to happen to him. Stanfield testified he was "super scared" at this point because he had no idea what Mapp, Nu, and the driver were capable of doing.

When they arrived at Stanfield's mother's house, Mapp, Nu, and Stanfield got out of the car. Stanfield testified that as they walked up to the house Mapp was holding the gun on him. Stanfield unlocked the door and let them into the house. Stanfield's younger brother and sisters, mom, and her boyfriend were asleep inside the house. Mapp and Nu went into Stanfield's bedroom and started searching for the money while Stanfield sat on the bed.

Mapp and Nu were unable to find the $35,000, but Stanfield had some cash on the nightstand that was missing after they were in the bedroom. Mapp and Nu grabbed Stanfield off the bed and led him out of the house and back into the vehicle with the gun pointed at him. After they were all back in the vehicle, they drove around and eventually went down a dead-end street. The vehicle stopped and someone said, "We didn't get what we wanted. Take his shit." Mapp, Nu, and the driver took Stanfield's phone, designer belt, earring, and keys. Stanfield's keys included keys to access both his grandmother's and mother's residences.

The State asked Stanfield what happened next and he stated that Mapp got out of the car, pointed the gun in his direction, and told him "[he] was lucky [Mapp] didn't do [him] like [Vasquez]." The State stopped Stanfield from saying anything further. Mapp's counsel objected to the statement, and a sidebar conference was held. Mapp's counsel argued the statement violated the order in limine and moved for a mistrial. The State responded that it had immediately stopped Stanfield from saying anything further and argued that the statement did not inform the jury that Mapp was charged with murder in a separate case.

The district court concluded the statement did not violate the order in limine because the order only prevented the State from adducing evidence that Mapp was charged with additional crimes in a separate case. The court stated that the State was permitted to get into the exact statements made by Mapp to prove the elements of the charges, specifically that Stanfield was robbed and kidnapped under terrorizing circumstances. The district court overruled the motion for mistrial.

Mapp's counsel then asked the district court to give a limiting instruction to the jury to disregard the statement by Stanfield. The district court found the entirety of Stanfield's statement was appropriate and admissible and did not give a limiting instruction.

Stanfield continued his testimony by stating that when he was pulled out of the vehicle on the dead-end street, Mapp had his gun out and threatened him. When Stanfield got a chance, he took off running toward an area of bushes behind a house and waited there. He eventually walked back to his mother's house and while doing so, he saw the vehicle he had been in with Mapp driving toward him. Stanfield ran across the street and as he did, he heard gunshots from the vehicle. He continued running until he got to his mother's house. Stanfield testified he was scared for his life.

When he got to his mother's house, he immediately called his grandmother and told her what had happened, including that his keys were taken, giving Mapp and the others access to her home.

The next day, Stanfield went back to his grandmother's house. Stanfield and his grandmother discovered that the incident that occurred at her front door the night before was captured on video by her ring doorbell. Stanfield did not report the incident to police because he was afraid of retaliation. He was worried that something bad would happen to his grandmother if he reported what happened to the police. His grandmother changed the locks on her house and shortly thereafter, she moved to a different location. Stanfield's mother also moved to a different location.

Four months after the incident Stanfield was contacted by the police about the robbery incident and he told them what happened. He testified that he never reached out to police to report the incident; they came to him and asked about it. He told the police about the video from the ring camera and turned it over to them. The audio of the video reflects the same conversation that Stanfield testified to while they were outside his grandmother's house.

Following trial, the jury found Mapp guilty of kidnapping, robbery, and use of a deadly weapon (firearm) to commit a felony. The court accepted the verdicts and adjudged Mapp guilty of all three offenses.

The district court sentenced Mapp to 10 to 15 years' imprisonment on each of the three counts, with the sentences for kidnapping and robbery to be served concurrently, and the sentence

for use of a deadly weapon (firearm) to commit a felony to be served consecutively to the sentences for kidnapping and robbery.

## ASSIGNMENTS OF ERROR

Mapp assigns the district court erred in (1) overruling his motion for mistrial and (2) failing to give a limiting instruction to the jury after it overruled his motion for mistrial.

## STANDARD OF REVIEW

An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion. *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

## ANALYSIS

*Motion for Mistrial.*

Mapp assigns that the district court abused its discretion by denying his motion for mistrial after Stanfield testified that during the kidnapping and robbery incident, Mapp told him "[he] was lucky [Mapp] didn't do [him] like [Vasquez]." Mapp alleges that the statement violated the order in limine, as well as Neb. Rev. Stat. §§ 27-403 and 27-404(2) (Reissue 2016).

We first address whether Stanfield's statement at issue violated the order in limine. A motion in limine is a

> request for an evidentiary ruling that is made in advance of trial, that seeks an order to exclude or regulate the production of potentially inflammatory evidence before the jury, and that seeks relief on the ground that the suggestive or uncontrolled revelation of that evidence to the jury may unfairly prejudice the determination of the case.

*State v. Huston*, 285 Neb. 11, 21-22, 824 N.W.2d 724, 733 (2013).

Mapp's motion in limine sought an order preventing the State from eliciting or admitting any evidence regarding Mapp's charge for first degree murder of Vasquez in a separate case. The court granted the motion, ordering that "the State shall be prevented from adducing evidence or making argument that [Mapp] has been charged with additional crimes in [another case]."

The court's order in limine only excluded evidence that Mapp was charged with other crimes in another case. Stanfield's statement that Mapp said "[he] was lucky [Mapp] didn't do [him] like [Vasquez]" did not suggest or indicate that Mapp had been charged with other crimes. Specifically, the "do [him] like [Vasquez]" phrase could mean a lot of different things, but in any event, the statement does not lead to a conclusion that Mapp was charged with crimes in another case.

Further, the specific reference to Vasquez did not violate the order. Although Vasquez was the victim of Mapp's charges in the separate case, the jury did not hear anything about what Mapp was accused of doing to Vasquez. Again, there is no indication that Mapp was charged with crimes related to Vasquez.

Mapp also argues that Stanfield's statement indicated a prior bad act, making it inadmissible under § 27-404(2), and he argues the statement was unfairly prejudicial in violation § 27-403.

Section 27-404(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Section 27-403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We determine Stanfield's statement was not inadmissible based on § 27-403 or § 27-404(2), as it was not evidence of a prior bad act nor was it unfairly prejudicial. As soon as the statement was made, the State stopped Stanfield from saying anything further, even before Mapp's attorney objected. There were no follow up questions asked after the statement was made. And as previously discussed, the statement did not indicate that Mapp was charged with other crimes nor did it indicate what Stanfield did to Vasquez. Rather, it was evidence showing that Mapp threatened Stanfield and helped establish the elements of kidnapping and robbery. As the district court found, the State was permitted to get into the exact statements made by Mapp to prove the elements of the charges to show that Stanfield was robbed and kidnapped under terrorizing circumstances. Stanfield's testimony established that Mapp threatened Stanfield to terrorize him or place him in fear, which are elements for both kidnapping and robbery. See, Neb. Rev. Stat. §§ 28-313(1)(c) & 28-324 (Reissue 2016). Mapp's threat also explained to the jury why Stanfield did not immediately report the incident to police.

We conclude that the district court did not err in failing to grant Mapp's motion for mistrial based on the one statement made by Stanfield. Mapp's first assignment of error fails.

*Limiting Instruction.*

Mapp next assigns that the district court erred in refusing to give a limiting instruction to the jury after it denied his motion for mistrial. He argues that Stanfield's statement at issue was inadmissible and, therefore, the court should have instructed the jury to disregard the statement. He contends it was inadmissible based on the same reasons he argued regarding the motion for mistrial--it violated the order in limine, was evidence of a prior bad act, and was unfairly prejudicial.

We have already determined that Stanfield's statement did not violate the order in limine and was not inadmissible based on § 27-403 or § 27-404(2). Accordingly, the statement was admissible evidence and a limiting instruction to disregard the statement was not warranted.

## CONCLUSION

The district court did not err in denying Mapp's motion for mistrial or his related request for a limiting instruction. Mapp's convictions and sentences are affirmed.

AFFIRMED.